**In re UNDERWOOD.**

[Cite as *In re Underwood* (1989), 64 Ohio App.3d 326.]

Court of Appeals of Ohio,
Crawford County.

No. 3–87–16.

Decided Sept. 20, 1989.

*Kennedy, Purdy, Hoeffel & Gernert* and *Terry L. Gernert,* for appellant Milton D. Underwood.

*Stanley Flegm,* Prosecuting Attorney, and *Russell Wiseman,* for appellee.

MILLER, Judge.

This is an appeal by Milton D. Underwood, a juvenile, from a finding of delinquency and the sentence entered thereon by the Court of Common Pleas of Crawford County, Juvenile Division, for vehicular homicide, in violation of R.C. 2903.07(A).

The complaint charged that Milton Underwood was "a delinquent child, in that he on or about the 9th day of February, 1987, in Crawford County, Ohio, did, while operating or participating in the operation of a motor vehicle, negligently cause the death of Audrey J. Barrick, in violation of Ohio Revised Code Section 2903.07 (Vehicular Homicide—a Misdemeanor of the First Degree if committed by an adult) and in violation of Ohio Revised Code Section 2151.02 (Delinquent Child) * * *."

On February 9, 1987, the defendant, while driving a motor vehicle eastbound on Nevada–Wynford Road, attempted to pass a vehicle operated by one Charles R. Brown, Jr. In doing so, appellant went left of the center line and struck the vehicle operated by the decedent, Audrey Barrick, who was traveling westbound on Nevada–Wynford Road.

At trial, the court found:

" * * * In carefully reading through the Statute and reading many of the case commentaries that have been cited by counsel to date, the Court finds that the standard of due care for the operation of the motor vehicle in this particular situation is contained in Ohio Revised Code, Section 4511.29, which is the method and manner of the operation of the motor vehicle while overtaking and passing same direction traffic.

"The Court does not find the standard of care, which has been prescribed by the Statutes, has been complied with. Therefore, the Court does find negligence, and therefore the Court does find there has been proof beyond a reasonable doubt of the vehicular homicide and therefore does enter a finding of being delinquent."

Defendant sets forth two assignments of error which we will consider in reverse order.

Assignment of error number two states:

"The trial court erred in determining that appellant was guilty of vehicular homicide, as the standard outlined in R.C. 4511.29 does not amount to criminal negligence."

R.C. 2903.07 provides:

"No person, while operating or participating in the operation of a motor vehicle, * * * shall negligently cause the death of another."

Appellant contends that the trial court erred in its determination that he was criminally negligent based on a violation of R.C. 4511.29.

R.C. 4511.29 provides:

"No vehicle or trackless trolley shall be driven to the left of the center of the roadway in overtaking and passing traffic proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made, without interfering with the safe operation of any traffic approaching from the opposite direction or any traffic overtaken. In every event the overtaking vehicle or trackless trolley must return to an authorized lane of travel as soon as practicable and in the event the passing movement involves the use of a lane authorized for traffic approaching from the opposite direction, before coming within two hundred feet of any approaching vehicle."

Charles Brown, the driver of the overtaken vehicle, testified as follows:

"Q Tell us the circumstances leading up to that incident.

"A I wasn't sure of the time exactly. I was heading east on Route 182 going towards Bucyrus. I was headed into Bucyrus. And, I looked into the rearview mirror. I noticed a pair of headlights coming up behind me very quickly.

"Q How fast were you going, if you know?

"A I glanced down at that time because I thought it might have been a patrolman coming up on me, and I checked to see if I was speeding. And, I was doing about fifty miles an hour.

"Q Okay, go ahead.

"A And, as I glanced back up into the rearview mirror to check to see where the headlights were, I seen the turn signal come on as he moved into the other lane. Then he came into my blind spot and I lost him out of the rearview mirror. And I knew we were coming up on a hill and I seen another car's headlights coming towards me. So I started veering to the right. As I topped the hill, I looked back towards the left to see where this pair of

headlights had went and as I did, that car run up under that truck and I must have been far enough off the road to avoid the accident. * * * ''

In addition, Brown testified that as appellant's car was on his left side, passing him, he could see the glow of the decedent's headlights coming toward him.

Deputy Sheriff George Albu testified that at the scene of the accident traffic was visible, day or night, in either direction.

During the trial there was no evidence of any unforeseen circumstance which placed appellant's vehicle on the left side of the roadway. Therefore, the trial court could properly find appellant guilty of negligence as a matter of law. See *Gelfand v. Strohecker* (N.D.Ohio 1956), 150 F.Supp. 655; *Powers v. Gilmore* (1959), 170 Ohio St. 140, 10 O.O.2d 92, 163 N.E.2d 161.

The issue presented is thus whether appellant was criminally negligent. ''Negligence,'' insofar as it applies to a culpable mental state for criminal conduct, is defined by R.C. 2901.22(D) as follows:

''A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.''

In *State v. Ovens* (1974), 44 Ohio App.2d 428, 431, 73 O.O.2d 540, 542, 339 N.E.2d 853, 856, a case involving R.C. 2903.07, the court, in determining what constitutes a ''substantial lapse'' from due care, stated:

''The word 'substantial' is a relative and not an exact term. It has been said to be as elusive a word as the English language contains, and is of varied meaning. It is susceptible of different meanings according to the circumstances of its use, and in considering the word it must be examined in its relation to the context, and its meaning is to be gauged by all the circumstances surrounding the transaction with respect to which it has been used. * * * ''

Further, the court in *State v. Ovens, supra,* at 432, 73 O.O.2d at 542, 339 N.E.2d at 856, stated:

''Essentially, the determination of whether or not a lapse of due care is substantial is a question for the trier of facts. * * * ''

From all the circumstances surrounding the incident in question, we conclude that the record is such that the trier of facts could find beyond a reasonable doubt that the defendant's conduct constituted a substantial lapse from due care.

Assignment of error number two is not well taken.

Assignment of error number one is as follows:

"The trial court's judgment is not supported by the manifest weight of the evidence."

Defendant contends that there was no evidence produced at trial which would support the trial court's finding that his negligent conduct amounted to a "substantial lapse from due care."

In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59, 526 N.E.2d 304, 307, the Supreme Court, citing *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, stated:

"A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

Paragraphs one and two of the syllabus in *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, state:

"1.  On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.

"2.  A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court."

While this case involved a juvenile and was tried to the court, the weight and credibility to be accorded the testimony of witnesses was nonetheless for the determination of the trier of facts.

We conclude that, based on the testimony set forth above under assignment of error number two, there was substantial, credible evidence which, if believed by the trial court, would support its findings by evidence beyond a reasonable doubt.

Finding no error of the trial court prejudicial to defendant as assigned and argued, we affirm the trial court's judgment.

*Judgment affirmed.*

EVANS, P.J., and SHAW, J., concur.