The STATE of Ohio, Appellee,

v.

LANGENKAMP, Appellant.

[Cite as *State v. Langenkamp* (2000), 137 Ohio App.3d 614.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–99–08.

Decided May 3, 2000.

*Paul E. Howell,* Mercer County Prosecuting Attorney, and *Matthew K. Fox,* for appellee.

*Robert E. Cessner, Jr.,* for appellant.

WALTERS, Judge.

Appellant, Toby J. Langenkamp, appeals a judgment of the Celina Municipal Court, Mercer County, convicting him of vehicular homicide pursuant to R.C. 2903.07, a first-degree misdemeanor. For the reasons that follow, we affirm the judgment of the trial court.

On October 13, 1998, appellant was driving northbound on State Route 716, a two-lane road in a rural stretch of Mercer County, when he came upon a slow-moving, full-size pickup truck towing a sixteen-foot trailer. Thereafter, appellant moved into the southbound lane of traffic in an attempt to pass the pickup truck in front of him. At the time appellant initiated the maneuver, he was in a legal passing zone.

Shortly after moving into the southbound lane, however, appellant started traveling through a no-passing zone, which began approximately one hundred feet south of the intersection of State Route 716 and Marion Road. Appellant continued traveling northbound in the southbound lane of travel through the intersection of State Route 716 and Marion Road as he attempted to pass the truck in front of him. After crossing through the intersection, appellant realized that there was a slow-moving tractor pulling a hay baler traveling northbound directly in front of the pickup truck. Nevertheless, appellant maintained his position, accelerating through the no-passing zone to approximately sixty-five miles per hour.

While appellant was attempting to pass the vehicles, however, the tractor initiated a left turn across the southbound lane of State Route 716 onto Droesch Road, a no-outlet road that abuts State Route 716 from the west. Appellant applied his brakes in an attempt to avoid the tractor, but was unable to do so. Appellant's vehicle skidded more than one hundred feet across the asphalt and

grass before colliding with the tractor at the intersection of State Route 716 and Droesch Rd. As a result of the collision, the driver of the tractor was killed.

On November 20, 1998, appellant was charged with one count of vehicular homicide pursuant to R.C. 2903.07, a first-degree misdemeanor. After a trial to the bench, appellant was convicted on June 25, 1999.

Appellant timely appeals the decision of the trial court, assigning one error for our review:

"The trial court erred in finding the defendant guilty of negligent vehicular homicide, in violation of Ohio Revised Code Section 2903.07 for the reason that the court misconstrued Ohio Revised Code 4511.39, and, in addition, arrived at a verdict which was against the manifest weight of the evidence."

■ The proper standard to employ when considering an argument that a conviction was against the manifest weight of the evidence has been set forth as follows:

" 'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way * * *.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720.

■ Appellate courts are cautioned to sustain manifest-weight arguments only in the most extraordinary cases. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d at 547.

R.C. 2903.07(A) defined (effective March 23, 2000, R.C. 2903.07 became part of R.C. 2903.06) the offense of vehicular homicide as follows:

"No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall negligently cause the death of another * * *."

Pursuant to R.C. 2903.07(A), the elements that must be proven beyond a reasonable doubt are "(1) operation of a motor vehicle, (2) lack of due care during the operation of that vehicle, and (3) death proximately caused by that lack of due care." *State v. Vaught* (1978), 56 Ohio St.2d 93, 95, 10 O.O.3d 224, 225, 382 N.E.2d 213, 214; See, also, *State v. Mason* (June 27, 1986), Allen App. No. 1–85–11, unreported, 1986 WL 7473; *State v. Rose* (June 18, 1982), Logan App. No. 8–81–7, unreported, 1982 WL 6815.

Appellant concedes that he was driving when the accident occurred. He also concedes that the collision was the proximate cause of the decedent's death. However, he argues that his actions were not the proximate cause of the collision.

Additionally, appellant argues that he did not display a lack of due care in operating his vehicle prior to the accident. Both issues are discussed separately below.

I

■ Due Care

R.C. 2901.22(D), which defines the culpable mental state of negligence, states:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

The 1973 Technical Committee Comment to Am.Sub.H.B. No. 511, a Legislative Service Commission Summary, concerning R.C. 2901.22, states:

"Although the definition of 'negligence' in the new code is structured similarly to the definition of ordinary negligence used in tort law, it defines a higher degree of negligence than ordinary negligence. For one to be negligent under this section he must be guilty of a substantial departure from due care, whereas ordinary negligence merely requires a failure to exercise due care."

With respect to what constitutes a substantial lapse of due care pursuant to R.C. 2903.07, this court has previously stated:

■ " 'The word "substantial" is a relative and not an exact term. It has been said to be as elusive a word as the English language contains, and is of varied meaning. It is susceptible of different meanings according to the circumstances of its use, and in considering the word it must be examined in its relation to the context, and its meaning is to be gauged by all the circumstances surrounding the transaction with respect to which it has been used.' " *In re Underwood* (1989), 64 Ohio App.3d 326, 329, 581 N.E.2d 599, 601, quoting *State v. Ovens* (1974), 44 Ohio App.2d 428, 431, 73 O.O.2d 540, 542, 339 N.E.2d 853, 856; See, also, *State v. Wooten* (Sept. 29, 1994), Crawford App. No. 3–94–7, unreported, 1994 WL 530694.

In addition, " 'the determination of whether or not a lapse of due care is substantial is a question for the trier of facts.' " *In re Underwood*, 64 Ohio App.3d at 329, 581 N.E.2d at 601, quoting *Ovens*, 44 Ohio App.2d at 432, 73 O.O.2d at 542, 339 N.E.2d at 856.

In determining that appellant had a substantial lapse of due care, the trial court found that appellant was operating his vehicle in a no-passing zone, which was clearly identified by painted yellow lines on the road. Appellant was

traveling in a no-passing zone for more than five hundred feet, driving through two intersections in the process. The trial court also found that appellant could have applied his brakes and got back into the northbound lane of traffic after discovering that he was driving in a no-passing zone. Further, the court found that appellant was traveling in excess of the posted speed limit while attempting to pass the vehicles.

In support of the trial court's decision, we note R.C. 4511.30, which states:

"No vehicle or trackless trolley shall be driven upon the left side of the roadway under the following conditions:

" * * *

"(C) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing."

In addition, R.C. 4511.31 states:

"The department of transportation may determine those portions of any state highway where overtaking and passing other traffic or driving to the left of the center or center line of the roadway would be especially hazardous, and may, by appropriate signs or markings on the highway, indicate the beginning and end of such zones. When such signs or markings are in place and clearly visible, every operator of a vehicle or trackless trolley shall obey the directions thereof, notwithstanding the distances set out in section 4511.30 of the Revised Code."

Appellant does not dispute the fact that he was traveling in the southbound lane of traffic through a no-passing zone, nor does he dispute the fact that he was traveling in a no-passing zone where both Marion Road and Droesch Road intersect with State Route 716. Rather, he argues that once he discovered he was in a no-passing zone, it was not feasible for him to get back into the northbound lane of travel because there was not enough space between the pickup truck and the tractor.

In support, appellant cites *State v. Shackleford* (1955), 100 Ohio App. 487, 60 O.O. 385, 137 N.E.2d 637, and *State v. Roof* (1954), 99 Ohio App. 455, 59 O.O. 242, 134 N.E.2d 182. In *Shackleford,* the defendant was initially convicted of violating R.C. 4511.31 after attempting to pass another vehicle in a no-passing zone. In *Roof,* the defendant was convicted of a similar municipal code violation. In each case, the defendant began passing in an area where passing was not restricted and subsequently entered a no-passing zone before completing the pass. The court of appeals in both cases ruled that the drivers' actions did not amount to a violation of R.C. 4511.31, or its local equivalent (*Roof*).

In contrast, however, this court decided *State v. Morris* (May 1, 1991), Logan App. No. 8–90–5, unreported, 1991 WL 71922, wherein the defendant was

charged with violating R.C. 4511.31 after passing a vehicle in a no-passing zone. At the time, the defendant was also traveling through an intersection. In *Morris*, we held that the facts in both *Shackleford* and *Roof* are "inapplicable as neither case involved a motorist traveling left of center through an intersection while in the process of overtaking and passing another automobile." *Id.* at *1. Furthermore, the appellant testified in our case at trial that it would have been possible to apply his brakes and return safely into the northbound lane of travel behind the truck and trailer, rather than pulling in between the truck and the tractor.

In addition to the trial court's findings of fact, the record establishes that appellant did not give an audible signal prior to passing either vehicle. R.C. 4511.27 states:

"The following rules govern the overtaking and passing of vehicles or trackless trolleys proceeding in the same direction:

"(A) The operator of a vehicle or trackless trolley overtaking another vehicle or trackless trolley proceeding in the same direction shall, except as provided in division (C) of this section, signal to the vehicle or trackless trolley to be overtaken, shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle or trackless trolley.

"(B) Except when overtaking and passing on the right is permitted, the operator of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle at the latter's audible signal, and he shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

In *Wilfong v. Batdorf* (1983), 6 Ohio St.3d 100, 102, 6 OBR 162, 164, 451 N.E.2d 1185, 1187, overruled in part on separate grounds by *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489,[1] the Supreme Court of Ohio stated that the purpose of R.C. 4511.27 is to alert the overtaken vehicle so that such vehicle will not move into the left-hand lane of travel where the overtaking vehicle is traveling. The court also noted the distinction between subsections (A) and (B) in R.C. 4511.27, finding that an audible signal is not required in every instance. Rather, it is a question of fact regarding whether the signal given by the overtaking vehicle is sufficient. *Wilfong*, 6 Ohio St.3d at 102–103, 6 OBR at 164, 451 N.E.2d at 1187–1188.

---

**1.** Although *Wilfong* continues to state the law as it pertains to R.C. 4511.27, the court in *Van Fossen* held that the analysis of whether a statute is unconstitutionally retroactive in violation of Section 28, Article II of the Ohio Constitution requires an initial determination of whether the statute is substantive or remedial, thus, overruling *Wilfong* to the extent of its inconsistency.

Even though the trial court in this case did not address this issue in its judgment entry, after weighing the evidence, it is reasonable to conclude that although appellant testified that he used his turn signal, he should have given an audible signal prior to passing the vehicles. Appellant was traveling in a no-passing zone for more than five hundred feet while passing through two intersections. It is reasonable to assume that one of the vehicles would have initiated a turn off of State Route 716 onto one of the intersecting roads. It is also reasonable to assume that the decedent's view may have been impaired due to the large vehicle traveling directly behind him.

Therefore, after weighing the evidence in the record before us, we conclude that the trial court's finding that appellant displayed a substantial lapse of due care is not against the manifest weight of the evidence, and the trial court did not clearly lose its way in reaching this decision.

## II

Proximate Cause

■ "[T]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 117, 28 O.O. 50, 52, 53 N.E.2d 1018, 1020. See, also, *Oswald v. Connor* (1985), 16 Ohio St.3d 38, 42, 16 OBR 520, 523, 476 N.E.2d 658, 662; *Johnson v. BP Exploration & Oil, Inc.* (1996), 115 Ohio App.3d 266, 271, 685 N.E.2d 275, 278.

■■ Appellant argues that it was the decedent's actions, and not his own, which were the proximate cause of the accident and the decedent's death. Initially, we note that it is well settled that any contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident. *State v. McGraw* (Dec. 15, 1989), Shelby App. No. 17–88–2, unreported, 1989 WL 153589, at *3. See, also, *State v. Royer* (Nov. 19, 1981), Logan App. No. 8–80–20, unreported, 1981 WL 6723, at *2; *State v. Grant* (July 21, 1993), Lake App. No. 92–L–037, unreported, 1993 WL 273402, at *2; *Cleveland v. Calhoun* (Nov. 14, 1991), Cuyahoga App. No. 59413, unreported, 1991 WL 238924, at *2.

In support of his argument, appellant first claims that the decedent failed to exercise due care in executing the left turn onto Droesch Road. Appellant cites R.C. 4511.39, which states:

"No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the

movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

"When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning."

█ Specifically, appellant argues that the decedent failed to come to a complete stop, and failed to look in his rear-view mirrors prior to initiating the left-hand turn. The trial court, however, held that the decedent had no legal obligation to come to a complete stop prior to initiating the turn. We agree. Nothing in R.C. 4511.39 states that the driver of a motor vehicle must come to a complete stop prior to initiating a turn in either direction. Furthermore, appellant has cited no case law to support his argument that the decedent had a legal obligation to come to a complete stop pursuant to R.C. 4511.39.

Further, there is no evidence in the record to support a conclusion, one way or the other, that the decedent did or did not look in his rear view mirrors prior to initiating the left-hand turn onto Droesch Road. Assuming, *arguendo,* that the decedent did not do so, we cannot say that the trial court erred in determining that appellant's actions were the proximate cause of the accident. Any failure by the decedent to do so may have been a contributing factor to the accident; however, in light of appellant's actions, we cannot say that it was the sole proximate cause of the accident.

Appellant also argues that the decedent failed to use his turn signal to alert drivers behind him prior to initiating the turn. In support, appellant claims that the testimony of Mr. Brunswick, the driver of the pickup truck traveling directly behind the decedent, clearly establishes that the decedent did not use his turn signal. After a close examination of Brunswick's testimony, however, it is not clear, as appellant contends, whether or not the decedent used his turn signal prior to turning onto Droesch Road. In his testimony, Brunswick stated:

"Q. Did you ever see the tractor stop before the collision?

"A. Slowed up.

"Q. He slowed up, but he went into his turn?

"A. Uh-huh.

"Q. Didn't stop?

"A. No.

"Q. *Didn't signal?*

"A. *Like I said, that's when I was looking in the mirror because when he started slowing up, I knew he was going to turn and that's when I looked in the*

*mirror, I seen the white car (inaudibles), I hope he don't turn left."* (Emphasis added.)

Again, assuming, *arguendo*, that the decedent failed to signal his turn, the evidence shows that, immediately prior to the accident, appellant had been speeding through a no-passing zone for more than five hundred feet and was in a no-passing zone at two separate intersections. Quite simply, the decedent's actions were not the sole proximate cause of the accident.

Therefore, after weighing the evidence in the record before us, we conclude that the trial court's finding that appellant's actions were the proximate cause of the accident is not against the manifest weight of the evidence and that the trial court did not clearly lose its way in reaching this decision.

Accordingly, appellant's assignment of error is not well taken and is therefore overruled.

Having found no error prejudicial to the appellant herein, we hereby affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, P.J., and THOMAS F. BRYANT, J., concur.