OPINION
{¶ 1} Defendant-appellant, William J. Dailey, Jr. appeals from the judgment of conviction and sentence entered in the Morrow County Municipal Court upon a jury's verdict finding appellant guilty of vehicular homicide, a misdemeanor of the first degree, in violation of R.C. 2903.06(A)(3).
 {¶ 2} The instant cause arises out of a fatal automobile accident in Morrow County involving the appellant, William J. Dailey, Jr. and Scott L. Carpenter. The decedent, Sylvia Rayetta Stewart, was riding as a passenger in Mr. Carpenter's car at the time of the collision.
 {¶ 3} At approximately 9:00 a.m. on November 28, 2003, Scott L. Carpenter was driving a 1985 Mercury Grand Marquis automobile northbound on State Route 314 in Morrow County, Ohio. Appellant and his passenger William Adams were traveling eastbound on State Route 97 in a large Ryder type 2002 Ford E350 truck. The truck was towing an empty car dolly trailer. Appellant testified that he stopped his truck at the stop sign where State Route 97 intersects with State Route 314, looked to his left and right and proceeded into the intersection. Appellant claims he did not see Carpenter's vehicle coming until appellant's vehicle was in the middle of the intersection. Carpenter's vehicle was roughly 100 yards away at this point according to appellant. Appellant turned his wheel and accelerated in an attempt to avoid the collision. State Route 314 does not have any traffic control devices at the State Route 97 intersection.
 {¶ 4} Appellant was subsequently tried in the Morrow County Municipal Court. Prior to closing arguments appellant's trial counsel requested in writing special jury instructions concerning "right of way" and "general caution signs" which the trial court *Page 3 
declined to give to the jury. The jury found appellant guilty of vehicular homicide. On August 21, 2006 the trial court sentenced appellant to serve one hundred eighty days incarceration, a fine of $1,000.00 and a five year driver license suspension.
 {¶ 5} Appellant filed a timely notice of appeal and herein raises the following two assignments of error for our consideration:
 {¶ 6} "I. IT WAS AN ABUSE OF DISCRETION AND THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING DEFENDANT'S WRITTEN REQUEST FOR A RIGHT OF WAY INSTRUCTION AND GENERAL CAUTION SIGN INSTRUCTION.
 {¶ 7} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED THE TROOPER TO TESTIFY AS AN EXPERT CONCERNING THE RIGHT-OF-WAY OF THE VEHICLES."
 I. {¶ 8} In his first assignment of error, appellant asserts that the trial court committed prejudicial error when it failed to properly instruct the jury. Appellant claims that the court improperly failed to define "Right-of-way" and "General Caution Signs." Appellant further contends that the trooper who investigated the accident was permitted to testify that a driver who has the initial right-of-way never loses his right of way even if he ignores a caution sign and is driving in excess of the speed limit. Appellant argues that this is an incorrect statement of the law and when combined with the trial court's instruction on "causation" the jury had no choice but to convict him. We disagree.
 {¶ 9} We note appellant does not cite any portion of the record where the trooper gave such an opinion. *Page 4 
 {¶ 10} In State, ex rel. Physician's Committee for ResponsibleMedicine v. Board of Trustees of Ohio State University noted: "[t]he omission of page references to the relevant portions of the record that support the brief's factual assertions is most troubling. Appellate attorneys should not expect the court `to peruse the record without the help of pinpoint citations' to the record. Day v. N. Indiana Pub. Serv.Corp. (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct.Prac.R. VI(2)(B)(3) requires, the court is forced to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified". 108 Ohio St.3d 288, 291 2006-Ohio-903
at ¶ 13, 843 N.E.2d 174, 177-78.
 {¶ 11} A review of the record in the case at bar reveals that the "right-of-way" issue was broached by appellant's trial counsel on cross-examination. (T. at 98-100). The record further reveals that, contrary to appellant's assertions, the trooper actually testified that a driver stopped at a stop sign who sees a car approaching at a high rate of speed, cannot deliberately drive into imminent danger of a collision, upon an assumption that the driver who initially has the right-of-way has lost the right-of-way because of his excessive speed. (T. at 98; 100; 101). In other words "the fact that the driver on the preferential thoroughfare forfeits the right of way by driving in an unlawful manner, does not relieve the unfavored driver of the duty to look for approaching *Page 5 
vehicles on the main thoroughfare and to exercise ordinary care to avoid a collision." Smith v. Jones (1960), 112 Ohio App. 195, 198,175 N.E.2d 758, 760.
 {¶ 12} However, we will address appellant's assignment of error in the context that the trial court failed to give the instructions requested in writing by appellant's trial counsel prior to closing arguments.
 {¶ 13} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St. 3d 206, paragraph two of the syllabus. If a requested instruction contain a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. State v.Nelson (1973), 36 Ohio St. 2d 79, paragraph one of the syllabus. However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. Riley v. Cincinnati (1976),46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135; Murphy v. CarrolltonManufacturing Co. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v.Huettner (1971), 28 Ohio St.2d 54, 275 N.E.2d 340, at syllabus;Murphy v. Carrollton Manufacturing Co., supra; State v. Coleman, 6th Dist. No. S-02-41, 2005-Ohio-318 at ¶ 12.
 {¶ 14} Appellant was convicted of vehicular homicide. That offense is set forth in R.C. 2903.06(A) (3) (a), and provides, in pertinent part: *Page 6 
 {¶ 15} "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another in any of the following ways. . . negligently. . . ."
 {¶ 16} Under R.C. 2903.06(A) (3) (a), therefore, the elements which must be proved beyond a reasonable doubt are (1) operation of a motor vehicle, (2) lack of due care during the operation of that vehicle, and (3) death proximately caused by that lack of due care. State v.Vaught (1978), 56 Ohio St.2d 93, 94-95, 382 N.E.2d 213, 214. [Construing former statute R.C.2903.07 (A)].
 {¶ 17} R.C. 2901.22(D) defines criminal negligence as follows:
 {¶ 18} "(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."
 {¶ 19} Under R.C. 2901.22(D) something more than ordinary negligence is required to prove criminal negligence. There must be a substantial lapse from due care. State v. Varney (June 22, 1987, 12th
Dist. No. CA86-07-100; State v. Mason (June 27, 1986), 3rd Dist. No. 1-85-11; State v. McKeand (Sept. 29, 1986), 12th Dist. No. 86-02-018.
 {¶ 20} The trial court in the case at bar instructed the jury pursuant to OJI Section 409.31, ". . .you will observe that the lapse or failure to use due care must be substantial. The lapse must be a material departure from the standard of due care. If you find that the defendant failed to use due care, you must also determine if his failure was a *Page 7 
substantial departure from the standard of due care". (T. at 204).See, State v. Abboud (Nov. 16, 1995), 8th Dist. No. 68611.
 {¶ 21} "Substantial" for purposes of criminal negligence is a determination for the trier of fact. State v. Jones, 2nd
Dist. No. 2000CA57, 2001-Ohio-1508; State v. McKeand, supra; State v.Ovens (1974), 44 Ohio App.2d 428.
 {¶ 22} In the case at bar, appellant requested the trial court instruct the jury on right-of-way at through highways.
 {¶ 23} R.C. 4511.01 states in relevant part:
 {¶ 24} "(UU) `Right-of-way' means . . .:(1) The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path. . . ."
 {¶ 25} Appellant further requested that the trial court charge the jury in accordance with 1 OJI 7.20 "GENERAL CAUTION SIGNS (NOT A TRAFFIC CONTROL DEVICE)" which provides:
 {¶ 26} "1. If you find that at the time in question, a sign was displayed containing (describe), such sign does not require a specific course of conduct on the part of the (defendant) (plaintiff). But ordinary care must be exercised in the light of the presence or knowledge of the sign. The presence of the sign is one of the facts to be considered in deciding whether the (defendant) (plaintiff) used ordinary care under all the circumstances." [See, Johnson v. Hunter
(1957), 166 Ohio St. 289, 142 N.E.2d 227]. *Page 8 
 {¶ 27} The evidence in the case at bar discloses that the vehicle in which the decedent was riding was traveling northbound on State Route 314. (T. at 26). A warning sign is posted along that route that there is an intersection ahead. [T. at 65]. A yellow cautionary sign with a suggested speed limit of 35 M.P.H. is posted two-tenths of one mile prior to where State Route 314 intersects with State Route 97. [T. at 65; 88-89; Joint Exhibit D]. State Route 314 does not have any traffic control devices at the State Route 97 intersection. Appellant was traveling eastbound on State Route 97. A yellow "Stop Ahead" warning sign is posted three-tenths of one mile prior to the intersection with State Route 314. (T. at 65; Joint Exhibit D]. Ten sets of "rumble strips" precede the intersection as a warning of the approaching stop sign. (T. at 65; Joint Exhibit D). State Route 97 has flashing red traffic signals and stop signs in both the east and west directions at the State Route 314 intersection. (T. at 65; Joint Exhibit D).
 {¶ 28} The record in the case at bar further reveals a nine hundred ninety foot line of clear vision from the stop sign at the State Route 97 intersection south to the crest of the hill on southbound State Route 314. (T. at 66-67; Joint Exhibit D). In other words, a person traveling eastbound, as appellant was, on State Route 97 who stopped his vehicle at the intersection would be able to see oncoming traffic traveling northbound, as the decedent's vehicle was, on State Route 314 for a distance of nine hundred ninety feet away from the intersection. (T. at 67). Mr. Carpenter testified that he saw appellant's vehicle as that vehicle was approaching the stop sign. (T. at 27; 29; 34; 40). Carpenter had past the yellow cautionary sign with a suggested speed limit of 35 M.P.H. prior to appellant's vehicle arriving at the stop sign. (T. at 40). Carpenter testified that he applied his brakes because he did not think appellant's vehicle was going to *Page 9 
stop at the intersection. (T. at 27; 29; 34; 41-42). Carpenter "let off the brake" because he thought appellant's vehicle had stopped at the stop sign. (T. at 41-42).
 {¶ 29} Appellant testified that he stopped at the stop sign, looked left and right "[a]nd on three" he proceeded into the intersection. (T. at 121). Appellant testified that he did not see any vehicles before he started into the intersection. (T. at 121; 124). Appellant claims he did not see Carpenter's vehicle coming until appellant's vehicle was in the middle of the intersection. (T. at 127). Carpenter's vehicle was roughly 100 yards away at this point according to appellant. (T. at 121).
 {¶ 30} Carpenter testified that he believes he was traveling at 25 to 30 M.P.H. at the time of the collision. (T. at 41). Sergeant Smith, the Ohio State Highway Patrol trooper who investigated the accident, testified that he believes that Carpenter was traveling at approximately 55 M.P.H. at the time of the collision. (T. at 93; 99-100). Sergeant Smith, however, did not make any attempt to determine the speed of Carpenter's vehicle because he did not believe speed was a factor in causing the collision. (T. at 72; 103). Appellant presented testimony from Timothy J. Tuttle an accident reconstruction expert. Mr. Tuttle presented a 3-D computer simulation of how he believed the accident occurred. (T. at 140-149). Mr. Tuttle opined based upon his analysis that Carpenter's vehicle was traveling at 85 M.P.H. at the time of impact. (T. at 145; 149). He further opined that appellant's vehicle was traveling at 18 M.P.H. at the time of impact. (Id.). Finally, Mr. Tuttle opined that if Carpenter's vehicle had been traveling at 55 M.P.H. the accident would not have occurred. (T. at 153; 155). However, and of relevance to appellant's assignment of error, Mr. Tuttle agreed that appellant had a nine hundred ninety foot line of clear vision from the stop sign at the State Route 97 *Page 10 
intersection south to the crest of the hill on southbound State Route 314. (T. at 157-58; 173). Mr. Tuttle further testified that at a speed of 85 M.P.H. Carpenter's vehicle would have been 660 feet away from the intersection at the time appellant's vehicle moved into the intersection. (T. at 158; 172-73). Finally Mr. Tuttle explained that the accident was caused due to the average person's inability to estimate the speed of an approaching vehicle. (T. at 158-160). Mr. Tuttle did not testify that appellant's view was obstructed or that Carpenter's vehicle was indiscernible from the stop sign located at the intersection. Further he offered no explanation as to why appellant would fail to see the oncoming vehicle. Mr. Tuttle did testify that if Carpenter's vehicle was traveling 85 M.P.H. and was approximately 600 feet from the intersection it would take Carpenter's vehicle 4.8 seconds to reach the intersection. (T. at 175-76).
 {¶ 31} Given the clear line of vision and even assuming Carpenter's vehicle was traveling 85 M.P.H. appellant should have seen Carpenter's vehicle almost a full five seconds before Carpenter reached the intersection. However, appellant testified that he did not see Carpenter's vehicle until it was 100 yards away after appellant had pulled into the intersection.
 {¶ 32} "The evidence indicates that appellant simply did not see the oncoming vehicle when in fact he could have and should have seen Taylor well before he did. This amounts to a failure to notice or perceive another motorist. Similar conduct has been upheld as constituting a substantial lapse from due care for purposes of R.C. 2903.07(A). See,e.g., State v. Mason (June 27, 1986), Allen App. No. 1-85-11, unreported (defendant did not see motorcyclist when turning left from apartment driveway onto street); State v. Boggs (Aug. 11, 1981), Belmont App. No. 80-B-46, *Page 11 
unreported (defendant failed to see another motorist while making a lane change on an interstate highway); and State v. Smith (App. 1978), 11 O.O.3d 343 (defendant did not see oncoming motorcycle before making a left turn at an intersection)". State v. McKeand (Sept. 29, 1986), 12th Dist. No. CA86-02-018. Further it is well settled that any contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident. State v. Langenkamp (2000), 137 Ohio App.3d 614, 620,2000-Ohio-1831, 739 N.E.2d 404, 409; State v. Garland (1996),116 Ohio App.3d 461, 468, 688 N.E.2d 557, 562; State v. Vansickle (March 11, 1992), 5th Dist. No. CA-3682; State v. McGraw (Dec. 15, 1989), Shelby App. No. 17-88-2; State v. Royer (Nov. 19, 1981), Logan App. No. 8-80-20; State v. Grant (July 21, 1993), Lake App. No. 92-L-037; Cleveland v. Calhoun (Nov. 14, 1991), Cuyahoga App. No. 59413.
 {¶ 33} Since it cannot be said that the accident was the sole proximate result of Carpenter's speed, the issue of Carpenter's speed as it affected his right of way is immaterial to the case. Accordingly, we find no abuse of discretion in the trial court's refusal to give appellant's requested jury instructions.
 {¶ 34} Appellant's first assignment of error is overruled.
 II. {¶ 35} In his second assignment of error appellant maintains that the trial court erred when it allowed Sergeant Smith to testify as an expert concerning the right-of-way of the respective vehicles at the time of the crash. We disagree.
 {¶ 36} As set forth in our analysis of appellant's first assignment of error, supra, Sergeant Smith's testimony concerning the right-of-way of the respective vehicles was a *Page 12 
correct statement of the law. Further, as the evidence establishes that appellant simply did not see the oncoming vehicle when in fact he could have and should have seen it well before he did the issue of Carpenter's speed as it affected his right of way is immaterial to the case. Accordingly there is no reasonable possibility that the evidence may have contributed to the appellant's conviction. See State v.Bayless (1976), 48 Ohio St.2d 73, 106, 267, 357 N.E.2d 1035, 1056.
 {¶ 37} Appellant's second assignment of error is overruled.
 {¶ 38} For the foregoing reasons, the judgment of the Morrow County Municipal Court is affirmed.
Gwin, P.J., Farmer, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Morrow County Municipal Court is affirmed. Costs to appellant. *Page 1