In re NEILL.

[Cite as *In re Neill,* 160 Ohio App.3d 439, 2005-Ohio-1696.]

Court of Appeals of Ohio,
Third District, Logan County.

Nos. 8–04–08 and 8–04–09.

Decided April 11, 2005.

440

Steven R. Fansler, for appellant, Nicole Neill.

Alan Hale, Logan County Assistant Prosecuting Attorney, for appellee, state of Ohio.

CUPP, Judge.

{¶ 1} Defendant-appellant, Nicole Neill, a juvenile, appeals from the judgment and sentence of the Common Pleas Court of Logan County, Juvenile Division, in which Neill was found guilty of one count of violating Bellefontaine City Ordinances 331.22, "Driving onto Roadway from Place other than Roadway: Duty to Yield" ("failure to yield"), a minor misdemeanor, and two counts of vehicular manslaughter, violations of R.C. 2903.06(A)(4), misdemeanors of the second degree if committed by an adult.

{¶ 2} The facts and procedural history are as follows. Shortly after midnight on August 8, 2002, James Burkhammer was operating a motorcycle and was traveling on State Route 68, Main Street, in Bellefontaine, Ohio. Tammy Kotsaris was traveling as a passenger on the back of James's motorcycle. As James was traveling south on Main Street, Neill was exiting a Subway fast-food restaurant parking lot and attempted to turn left, north, onto Main Street. As Neill's vehicle crossed through the two southbound lanes to turn left onto Main Street, James's motorcycle violently collided with the driver's side of Neill's vehicle. James and Tammy died as a result of the injuries they sustained in the accident.

{¶ 3} On October 10, 2002, a delinquency complaint was filed against Neill. Neill denied the charges, and the matter proceeded to adjudication before the juvenile court. On February 4, 2004, the juvenile court, by judgment entry, found Neill guilty of one count of failure to yield and two counts of vehicular manslaughter. Thereafter, on February 25, 2004, Neill was sentenced to two weeks in a juvenile detention center, 60 hours of community service, and loss of her driver's license until the age of 21 and was also ordered to submit an apology letter, pay restitution, complete a driving course, and participate in victim/offender mediation if consented to by the victims' families.

{¶ 4} It is from this judgment that Neill now appeals and sets forth two assignments of error for our review.

{¶ 5} Prior to addressing Neill's assignment of error, we note that the operative language of Bellefontaine City Ordinances 331.22, failure to yield, is identical to R.C. 4511.44. Our analysis will be conducted in reference to R.C. 4511.44.

## Assignment of Error No. I

The trial court incorrectly applied vehicular homicide case law to our vehicular manslaughter.

{¶ 6} The applicable portion of the vehicular manslaughter statute provides that no person, while operating a motor vehicle, shall cause the death of another as the *proximate result of committing a minor misdemeanor traffic offense.*

R.C. 2903.06(A)(4). Thus, in order to find Neill guilty of vehicular manslaughter, the trial court was first required to find Neill guilty of a minor misdemeanor, which in this case is the failure-to-yield charge. See R.C. 4511.44(B).

{¶ 7} Although not entirely clear from Neill's first assignment of error, the emphasis of Neill's argument is that the trial court erred in failing to apply the proper legal analysis in finding her guilty of failure to yield and, consequently, further erred in finding her guilty of vehicular manslaughter. For the reasons that follow, we sustain appellant's first assignment of error.

{¶ 8} R.C. 4511.44(A) ("failure to yield") provides:

The operator of a vehicle * * * about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed.

{¶ 9} "Right of way" is defined in R.C. 4511.01(UU)(1),[1] as follows:

The right of a vehicle * * * to proceed uninterruptedly *in a lawful manner* in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path.

(Emphasis added.)

{¶ 10} Accordingly, a driver with the right of way has an absolute right to proceed uninterruptedly in a lawful manner, and other drivers must yield to him. *State v. Bush* (July 30, 1999), 2d Dist. No. 17671, 1999 WL 960582, citing *Vavrina v. Greczanik* (1974), 40 Ohio App.2d 129, 135, 69 O.O.2d 146, 318 N.E.2d 408. Conversely, the driver with the right of way forfeits this preferential status over other drivers if he or she fails to proceed in a lawful manner. Id. However, because the law presumes that a vehicle that ostensibly has the right of way is proceeding lawfully, the state is not required to prove lawful operation as an element of proving a violation of 4511.44(A), failure to yield. *State v. Harris* (Dec. 30, 1991), 12th Dist. No. CA91–06–012, 1991 WL 278245. Rather, a defendant who asserts that an opposing driver's right of way has been forfeited "is required to present evidence rebutting the presumption of lawful operation." Id. "A driver proceeds in a lawful manner by complying with Ohio traffic laws." *Bush*, supra, citing *Vavrina*, supra, 40 Ohio App.2d at 136, 69 O.O.2d 146, 318 N.E.2d 408.

{¶ 11} Neill maintains that James's motorcycle was traveling at a speed in extreme excess over the posted speed limit of 35 mph and, therefore, was not proceeding in a lawful manner. In support of her claim, Neill presented the trial court with expert testimony that James was likely traveling at a speed between

---

1. R.C. 4511.01(UU)(1) is parallel to the definition of "right-of-way" provided by Bellefontaine City Ordinances 301.32(a).

60 and 75 mph, and perhaps even as high as 78 mph. In addition, the state's rebuttal expert witness testified that James was likely traveling at a speed of 40 to 55 mph but in his estimation closer to 40 mph.

{¶ 12} Accordingly, having been presented with evidence tending to rebut the presumption that James was proceeding in a lawful manner, the trial court herein was obligated to resolve the issue whether James forfeited his right of way. *Harris,* supra; see, also, *State v. Neff* (1975), 41 Ohio St.2d 17, 18, 70 O.O.2d 82, 322 N.E.2d 274; *Upper Arlington v. Streets* (Dec. 20, 1994), 10th Dist. No. 94APC04–534, 1994 WL 714609.

{¶ 13} However, as stated by the Ohio Supreme Court:

Where a [statute or] municipal ordinance makes it prima facie unlawful for a motor vehicle to exceed a certain speed limit in a described locality, a speed greater than that specified does not establish the commission of an offense or constitute unlawful conduct per se, but establishes only a prima facie case under the [statute or] ordinance. Such a provision as to speed is merely a rule of evidence raising a rebuttable presumption which may be overcome by evidence showing that in the circumstances the speed was neither excessive nor unreasonable.

*Cleveland v. Keah* (1952), 157 Ohio St. 331, 47 O.O. 195, 105 N.E.2d 402, paragraph one of the syllabus; see, also, R.C. 4511.21(C); *State v. West* (Apr. 9, 1990), 12th Dist. No. CA89–11–096, 1990 WL 40619; *Streets,* supra. Accordingly, evidence of speed in excess of a posted speed limit *alone* is *not conclusive* that a vehicle is proceeding unlawfully and has forfeited its right of way. Therefore, when, as here, a defendant has initially rebutted the presumption that an opposing vehicle was proceeding lawfully because it was traveling in excess of a posted speed limit, the trial court must further determine whether the speed of the opposing vehicle was "reasonable given the surrounding conditions." *Fremont v. Tilson* (June 30, 1993), 6th Dist. No. S–92–25, 1993 WL 306564.

{¶ 14} Applied to the case herein, the trial court, in order to determine whether James forfeited his right of way, was required to determine whether James was traveling at a speed reasonable under the conditions at the time of the accident. Id.; see, also, *West; Streets,* supra. The trial court, in its decision, however, failed to analyze and resolve this issue.

{¶ 15} The trial court's February 4, 2004 judgment entry states: "The court FINDS that [Neill] had the legal obligation to * * * yield the right of way to *all* oncoming traffic." (Emphasis added). In considering the language employed by the court in its finding, we determine that the trial court applied an incorrect rule of law.

{¶ 16} Neill was not legally required to yield the right of way to all oncoming traffic, but only to traffic that was proceeding in a lawful manner. We conclude that the trial court failed to apply the correct legal standard because, after review of the transcript of the proceedings and the record together with the trial court's judgment entry, it is evident that the trial court failed to consider whether the rate of speed at which James was traveling was "reasonable given the surrounding circumstances," an essential fact for further determining whether James maintained the right of way at the time of the accident.[2] Because this is a question of fact and there is conflicting testimony and other evidence on this issue,[3] this disputed factual issue must first be resolved by the trial court. See, for example, *Harris*, supra, 12th Dist. No. CA91–06–012 at 4 ("The judgment is reversed and remanded for a determination of whether [defendant] was operating his vehicle in a lawful manner * * *").

{¶ 17} Because the trial court failed to find whether James possessed the right of way, it erred in finding Neill guilty of violating R.C. 4511.44, failure to yield, and, consequently, further erred in finding Neill guilty of violating R.C. 2903.06(A)(4), vehicular manslaughter. See *Harris*, supra. The trial court's judgment must, therefore, be reversed and the cause remanded for weighing the evidence and determining the unresolved factual issue whether James was operating his motorcycle in a lawful manner so that he maintained the right of way at the time of the accident.

{¶ 18} Neill's first assignment of error is, therefore, sustained.

---

**2.** It also appears that the trial court weighed the issue of contributory negligence in arriving at its determination whether defendant violated the requirement to yield instead of reserving that consideration for the issue to be determined secondarily, which is whether the failure to yield was the proximate cause of the death. The court's judgment entry stated, "Based on the testimony of Adam Hewitt, Jordan Kotsaris and the expert witnesses and the *relative times offered into evidence as to the amount of time Nicole Neill had in order to avoid the collision,* the court finds that Nicole Neill violated Bellefontaine City Ordinance § 331.22, Failure to Yield, a minor misdemeanor." (Emphasis added.) While evidence of time to react is relevant to the issue of whether a failure-to-yield violation was the proximate cause of the death, we are unable to conclude that this consideration of contributory negligence is relevant to determination of the failure-to-yield charge itself.

**3.** For example, the testimony provided by the witnesses to the accident and the varying expert opinions were not conclusive that James was traveling at an unreasonable speed. However, other evidence exists that indicates that James might have been traveling at an unreasonable speed. For example, Jordan Kotsaris, who had been traveling in another vehicle alongside James on Main Street, testified that James's motorcycle passed his vehicle and distanced itself from his vehicle by several car lengths within a short distance immediately prior to the collision. In addition, there was corroborated testimony that the impact of James's motorcycle caused Neill's vehicle to spin 180 degrees, so that it was then facing the Subway restaurant.

## Assignment of Error No. II

Even if the test is that contributory negligence of the motorcyclist will not be considered unless his negligence is the sole proximate cause (or he is 100% at fault) the trial decision should be reversed.

{¶ 19} In this assignment of error, Neill maintains that even if the trial court did not err in its analysis and judgment, and if contributory negligence is not a defense to vehicular manslaughter, the evidence in the case at bar establishes that James's conduct was the sole proximate cause of the accident, and, therefore, Neill has a valid defense to the charge of vehicular manslaughter.

{¶ 20} In accordance with our holding in Neill's first assignment of error, we are unable to decide Neill's second assignment of error upon the merits. The issue whether Neill has a valid defense to the two charges of vehicular manslaughter cannot be addressed until the trial court properly determines the failure-to-yield charge. Neill's second assignment of error is, therefore, rendered moot and is hereby overruled. See App.R. 12(A)(1)(c).

{¶ 21} Having found error prejudicial to appellant herein in the particulars assigned and argued, we reverse the judgments of the trial court and remand the matters for further proceedings consistent with this opinion.

*Judgments reversed*
*and causes remanded.*

ROGERS, J., concurs.

SHAW, J., dissents.

SHAW, Judge, dissenting.

{¶ 22} Because I believe that the trial court adequately determined the issue of whether the decedent was proceeding in a lawful manner, I respectfully dissent.

{¶ 23} R.C. 2903.06 governs the offense of vehicular manslaughter and provides:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle * * * shall cause the death of another * * * in any of the following ways:

* * *

(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance * * * for the violation, is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

\* \* \*

(D) Whoever violates division (A)(4) of this section is guilty of vehicular manslaughter. Except as otherwise provided in this division, vehicular manslaughter is a misdemeanor of the second degree.

{¶ 24} In analyzing this offense, the majority concludes that the fact-finder (in this case the trial court) must make a specific and affirmative finding that the speed of the decedent, while in excess of the posted speed limit, is reasonable under the circumstances as a predicate to any further determination of the charge. The majority asserts that without this specific finding, the trial court could not determine that the decedent was proceeding in a lawful manner when decedent's motorcycle collided with Neill's car and, therefore, that the trial court cannot find that the defendant failed to yield the right of way until it determines whether the decedent's speed was reasonable.

{¶ 25} I do not necessarily disagree that the determination suggested by the majority as to the overall reasonableness of the speed of the motorcycle is probably an essential step in a finding of guilt under R.C. 2903.06(A)(4). However, I believe that the determination is implicit in the trial court's analysis of proximate cause and that the essential inquiry for this court is simply whether the totality of the evidence supports the conclusions necessary for conviction, including the conclusion that the overall speed of the motorcycle was not unreasonable to the extent that it became the proximate cause of the collision.

{¶ 26} Specifically, if the evidence satisfies us that these conclusions are adequately supported in the record, I am not convinced that the statute or the case authority requires the fact-finder in a case such as this to make a special finding as to the speed of the motorcycle in order to demonstrate the legitimacy of its overall determination of guilt under R.C. 2903.06(A)(4) to the reviewing court. See, for example, *Upper Arlington v. Streets* (Dec. 20, 1994), 10th Dist. No. 94APC04–534, 1994 WL 714609, *3, citing *Cleveland v. Keah* (1952), 157 Ohio St. 331, 47 O.O. 195, 105 N.E.2d 402 ("the trial court could find on the evidence before it that [appellant's] speed was reasonable under the conditions, even though it was not required to do so"); *State v. West* (Apr. 9, 1990), 12th Dist. No. CA89–11–096, 1990 WL 40619, *2 (based on the evidence presented that Carr was exceeding the 40–mile–per–hour posted speed limit by as much as ten miles per hour at the time of the accident, the trial court could have determined that Carr was not traveling at an unreasonable rate of speed).

{¶ 27} R.C. 2903.06(A)(4) requires that the defendant's violation of the specified traffic offense be the proximate cause of the death of another person. Some traffic violations, such as failing to yield the right of way, are unusual in that proof of the charge necessarily involves an evaluation of the conduct of more than one person, i.e., the drivers of the two vehicles involved in the accident. More-

over, where the failure-to-yield charge is a predicate offense to a manslaughter charge as it is here, the proximate-cause determination of R.C. 2903.06(A)(4) is necessarily related to the conduct of both drivers in such a way that the fact finder can determine guilt only upon a totality-of-the-evidence analysis.

{¶ 28} In my view, this is exactly what the trial court did in this case. The trial court considered all of the evidence presented at trial when it made the determination that Neill failed to yield to the right of way of other traffic:

The Court FINDS that Nicole Neill had the legal obligation to proceed from the Subway parking lot in a lawful fashion, yielding the right-of-way to all oncoming traffic. Based upon the testimony of Adam Hewitt, Jordan Kotsaris and the expert witnesses and the relative times offered into evidence as to the amount of time Nicole Neill had in order to avoid the collision, the Court FINDS that Nicole Neill violated Bellefontaine City Ordinance § 331.22, Failure to Yield, a minor misdemeanor.

{¶ 29} The trial court made these findings based upon the testimony offered at the trial, including the lengthy testimony of expert witnesses regarding their opinions of decedent's rate of speed and a viewing of the motor vehicle driven by Neill and the motorcycle driven by decedent. While Neill testified that she looked both to her left and right before pulling out of the Subway parking lot, the testimony of two other witnesses cast doubt on Neill's testimony. For example, Adam Hewitt and Jordan Kotsaris, both traveling on State Route 68 at the time of the accident, testified both to seeing decedent's motorcycle traveling south on State Route 68 and to seeing Neill's car pull out of the Subway parking lot into its path. Further, Neill's statement, given shortly after the collision, indicated that Neill also saw the motorcycle as she was pulling out of the Subway parking lot. Neill's later testimony that she did not see either of the two cars or decedent's motorcycle could reasonably support inferences that she failed to look at all before pulling out of the Subway parking lot or that she misjudged the amount of time she had to safely enter the right of way of traffic. Either conclusion would support the trial court's determination that Neill committed the offense of failure to yield the right of way in entering State Route 68.

{¶ 30} In sum, while the trial court did not make a specific finding as to the rate of speed of the motorcycle preceding the collision, the trial court determined based on the evidence and the testimony that Neill had ample time to react to the motorcycle traveling south on State Route 68 had she looked to her left before pulling out of the Subway parking lot. The trial court's determination implicitly reflects the conclusion that the speed of the motorcycle did not serve to forfeit decedent's right of way. Therefore, in my view, the record supports the finding by the trial court that Neill failed to yield the right of way. Accordingly, I would

affirm the judgment of the Common Pleas Court of Logan County with regard to the conviction pursuant to Bellefontaine City Ordinances 331.22.

{¶ 31} As to the second assignment of error, upon making the finding that Neill was guilty of failure to yield the right of way and, therefore, guilty of a minor misdemeanor, the trial court further specifically addressed whether Neill's actions were the proximate cause of the deaths of the decedents. In doing so, the trial court relied upon this court's decision in *State v. Langenkamp* (2000), 137 Ohio App.3d 614, 621, 739 N.E.2d 404, which applied the proposition of law that "contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident." Although the *Langenkamp* case involved the offense of vehicular homicide pursuant to R.C. 2903.06(A)(3),[4] the analysis is applicable to the offense of vehicular manslaughter as well.

{¶ 32} In *Langenkamp*, the appellant was driving on a two-lane road in a rural area of Mercer County when he came upon a slow-moving, full-size pickup truck towing a 16–foot trailer. Appellant attempted to pass the truck by moving into the lane of oncoming traffic. At the time appellant moved into that lane, he was in a legal passing zone. However, shortly after moving into the lane, appellant started traveling through a no-passing zone. Appellant continued traveling in the lane of oncoming traffic through an intersection. As appellant attempted to pass the pickup truck he realized that there was a slow-moving tractor pulling a hay baler traveling directly in front of the truck. Nevertheless, appellant maintained his position and accelerated through the no-passing zone. While appellant was attempting to pass the vehicles, the tractor initiated a left turn across the lane of oncoming traffic. Appellant applied his brakes in an attempt to avoid the tractor, but was unable to do so. Appellant's vehicle collided with the tractor. As a result of the collision, the driver of the tractor was killed. Appellant was convicted of vehicular homicide.

{¶ 33} On appeal, appellant argued that while the collision was the proximate cause of the decedent's death, appellant's actions were not the proximate cause of the collision. Proximate cause of an event is defined as "that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." 137 Ohio App.3d at 621, 739 N.E.2d 404, citing *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 117, 28 O.O. 50, 53 N.E.2d 1018. The appellant in *Langenkamp* argued that the driver of the tractor failed to look in his rear-view mirrors before turning left and failed to use his turn signal to alert drivers behind him before turning. While the

---

**4.** Vehicular homicide was formerly codified under R.C. 2903.07, which is the section referred to in the *Langenkamp* case.

record in the case did not contain evidence to corroborate or rebut appellant's assertion that decedent failed to look in his rear-view mirror, this court held that even assuming that decedent did not do so, the trial court did not err in determining that appellant's actions were the proximate cause of the accident. *Langenkamp,* 137 Ohio App.3d at 622, 739 N.E.2d 404. This court held that "[a]ny failure by the decedent to do so may have been a contributing factor to the accident; however, in light of the appellant's actions, we cannot say that it was the sole proximate cause of the accident." Id.

{¶ 34} In the case sub judice, the trial court adopted the line of reasoning from the *Langenkamp* case and found that "while the Burkhammer motorcycle was most probably exceeding the posted speed limit of 35 mph, and taking into account all the other facts and circumstances entered into evidence, the court cannot make the finding that the decedent was 100% at fault." Three experts testified at trial and offered three different approximations of decedent's speed. The trial court concluded that despite decedent's speed, Neill had between 5.5 and 11.7 seconds within which she could have reacted in a manner other than entering the lane of traffic within which decedent was traveling. In my view, these conclusions are sufficient to support the trial court's determination that Neill's failure to yield the right of way was the proximate cause of the death of another pursuant to R.C. 2903.06(A)(4).

{¶ 35} As the trial court's findings and determinations regarding the right of way and proximate cause are adequately supported by the record, I would affirm the judgments of the Juvenile Court of Logan County with regard to Neill's conviction of two counts of vehicular manslaughter.