[Cite as *State v. Godfrey*, 2013-Ohio-3396.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO. 16-12-06

      v.

YUL T. GODFREY,                 O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 16-12-07

      v.

YUL T. GODFREY,                 O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Upper Sandusky Municipal Court**
**Trial Court Nos. TRD 1005424 and CRB-1000454B**

**Judgments Affirmed in Part, Reversed in Part and Causes Remanded**

**Date of Decision: August 5, 2013**

APPEARANCES:

    *Jerome Phillips* for Appellant

    *Richard A. Grafmiller* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Yul T. Godfrey ("Godfrey") brings this appeal from the judgment of the Upper Sandusky Municipal Court finding him guilty of vehicular manslaughter and failure to yield. For the reasons set forth below, the judgments are affirmed in part and reversed in part.

{¶2} On November 19, 2004, Godfrey was turning his semi-truck and trailer left onto State Route 15. A 2004 Chevrolet Tahoe driven by Juliana Karmann ("Karmann") was traveling northwest on State Route 15 at that time. Karmann's vehicle struck Godfrey's trailer behind the rear wheels. The vehicle then traveled through the median and struck another vehicle and some trees before stopping. Karmann was killed and her three passengers were injured. On November 22, 2004, Godfrey was charged with vehicular homicide, a first degree misdemeanor in violation of R.C. 2903.06, vehicular manslaughter, a second degree misdemeanor in violation of R.C. 2903.06, and failure to yield, a minor misdemeanor in violation of R.C. 4511.43. Godfrey entered pleas of not guilty to all charges.

{¶3} On January 5, 2012, a bench trial was held before the Upper Sandusky Municipal Court. The trial court found Godfrey not guilty of vehicular homicide, but guilty of vehicular manslaughter and failure to yield. Sentencing was set for a later date. On January 18, 2012, Godfrey filed a motion for a new trial pursuant to

Crim.R. 33(A)(4). The state filed no response to the motion. However, on March 23, 2012, private attorneys for the Karmann family filed a victim's motion in opposition to Godfrey's motion. A hearing was held on the motion on March 26, 2012. The trial court overruled the motion. On May 2, 2012, the trial court sentenced Godfrey to ninety days in jail, with the sentence suspended, a $750 fine, and court costs of $219 for the vehicular manslaughter and a $75 fine and court costs of $551.97 for the conviction on the failure to yield charge. Godfrey appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**The trial court erred by not applying the correct legal standard to determine if the victim's vehicle was traveling at a reasonable rate of speed given the surrounding circumstances.**

### Second Assignment of Error

**The trial court erred by ignoring stipulated facts in evidence when it denied [Godfrey's] motion for a new trial.**

### Third Assignment of Error

**The trial court erred by allowing private attorneys to participate on behalf of the prosecution during criminal proceedings.**

### Fourth Assignment of Error

**The trial court erred by not allowing [Godfrey's] counsel to utilize an independent stenographer during trial.**

**Fifth Assignment of Error**

**The verdict of the trial court was against the manifest weight of the evidence.**

{¶4} In the first assignment of error, Godfrey alleges that the trial court did not use the correct legal standard in determining whether the Karmann had forfeited her right of way by proceeding in an unreasonable manner. The Ohio Revised Code defines a failure to yield as follows.

> **The operator of a vehicle * * * about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed.**

R.C. 4511.44(A). A right of way is defined in a traffic case as the "right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path." R.C. 4511.01(UU)(1). By definition, a driver with the right of way has an absolute right to proceed in a lawful manner without interruption and other drivers must yield to him or her. *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, (3d Dist.), ¶10. However, a driver with the right of way forfeits this preferential status if that driver fails to proceed in a lawful manner. *Id*. A driver is presumed to be traveling in a legal manner unless a defendant presents evidence rebutting this presumption. *Id.*

{¶5} In *Neill*, the defendant was driving a vehicle and attempted to make a left turn. As she turned left, a motorcycle carrying a driver and a passenger struck the defendant's vehicle. The motorcycle occupants died as a result of the injuries sustained in the accident. The defendant, like Godfrey, was cited for failure to yield and vehicular manslaughter as a result of the accident. The defendant alleged that the motorcycle driver was traveling at a speed in extreme excess over the posted limit and was therefore not traveling in a lawful manner. The defendant presented evidence to support his claim. The trial court ignored this evidence and found the defendant guilty of the failure to yield and, as a result, of two counts of vehicular manslaughter.

{¶6} On appeal, this court held that once the presumption is raised that the decedent was traveling in an unlawful manner, the trial court is obligated to resolve the issue. *Id*. at ¶12.

> **Where a [statute or] municipal ordinance makes it prima facie unlawful for a motor vehicle to exceed a certain speed limit in a described locality, a speed greater than that specified does not establish the commission of an offense or constitute unlawful conduct per se, but establishes only a prima facie case under the [statute or] ordinance. Such a provision as to speed is merely a rule of evidence raising a rebuttable presumption which may be overcome by evidence showing that in the circumstances the speed was neither excessive nor unreasonable.**

*Cleveland v. Keah*, 157 Ohio St. 331 (1952), paragraph one of the syllabus. Although the evidence of speed alone is inconclusive to determine whether one

has forfeited the right of way, it is sufficient to raise the issue and require the trial court to determine whether the speed of the opposing vehicle was reasonable. *Neill*, *supra*, at ¶13-14. *See also*, *State v. West*, 12th Dist. No. CA-89-11-096, 1990 WL 40619, (Apr. 9, 1990), *Upper Arlington v. Streets*, 10th Dist. No. 94APC04-534, 1994 WL 714609 (Dec. 20, 1994). In *Neill*, this court then reversed the judgment of the trial court and remanded the matter for further consideration by the trial court.

{¶7} Here, the trial court determined that Godfrey was at fault because he failed to yield the right of way. However, Godfrey presented substantial evidence that Karmann was traveling above the posted speed limit. In Defendant's Exhibit 2, the expert explained how the Event Data Recorder ("EDR") worked, stated that he had verified its accuracy and how that was done, stated that it was working at the time of the accident and that the readings were valid. The statement then goes on to state that the recorded traveling speed of 95 mph was valid for this accident. In Defendant's Exhibit 4, the expert stated that had the Karmann vehicle been traveling at a reasonable speed, the accident would not have occurred. Larry Neuenschwander, whose vehicle was struck by Karmann's vehicle after it struck the trailer, testified that he observed Karmann's vehicle crossing the median and coming at him at a fast rate. Tr. 25-29.

{¶8} Ohio State Trooper Gary Griffeth testified that based on the physical evidence at the scene, the speed stated by the black box was reliable. Tr. 92. He also testified that even without the numbers presented by the black box, the physical evidence indicated that Karmann was traveling well above the posted speed. Tr. 93. He concluded that Karmann's speed was a significant factor in the accident. Tr. 98.

{¶9} Godfrey presented the testimony of Sergeant Christopher Kinn ("Kinn") who is a trained accident reconstructionist. He testified that Karmann's speed was unreasonable. Tr. 151-52. He further testified that if Karmann's vehicle had been going within five or ten miles over the posted speed limit, the accident would not have occurred. Tr. 154. Finally Kinn testified that he not only regularly relies upon EDR's for information, but that the physical evidence at the scene, such as the damage to the vehicles and the distance Karmann's vehicle traveled post-impact, supports the validity of the numbers provided by the EDR in this case. Tr. 170.

{¶10} Finally, Godfrey presented the testimony of Frederick Greive ("Greive"), an accident reconstructionist. He testified that he had reviewed the EDR data, photographs of the vehicles, the police reports, the scene, and the vehicles themselves. Tr. 174-75. Based upon all the evidence he had before him, Greive determined that the cause of the accident was the speed of Karmann's

Chevrolet Tahoe. Tr. 176. Grieve also testified that all of the physical evidence supported the data from the EDR as to the speed of Karmann's vehicle. Tr. 179. He, like Kinn, based his conclusion on the amount of damage done to the vehicles and the distance that the Karmann vehicle traveled post-impact. Tr. 179.

{¶11} Given all the testimony presented to the trial court, the issue of Karmann's speed was clearly raised by Godfrey at trial. Thus, the trial court had an obligation to determine whether Karmann was traveling at a reasonable speed for the conditions. If she was not, then she no longer had the right of way and Godfrey would not be guilty of failure to yield and thus not guilty of vehicular manslaughter. The trial court made no such determination which is an error at law. This court must reverse the judgment of the trial court and remand it for weighing of the evidence to determine the unresolved factual issue as to whether Karmann was operating her vehicle in a lawful manner so that she maintained the right of way at the time of the accident.

{¶12} This court notes that the State claims that this analysis is no longer required under the holding by this court in *State v. Schwieterman*, 3d Dist. No. 10-09-12, 2010-Ohio-102. However, the sole holding of this court in *Schwieterman* is that claims raised for the first time in a petition for post-conviction relief that could have been raised at trial are barred by the doctrine of *res judicata* and that the trial court was not required to hold a hearing on the matter. *Id*. at ¶27. The

case before us is a direct appeal and the issues were raised during trial. Thus the doctrine of *res judicata* and the holding in *Schwieterman* have no bearing on this case. The issue of the speed of Karmann's vehicle was clearly raised in this case. There was even testimony that the speed of Karmann's vehicle was the cause of the accident and that the accident would not have occurred if she had been traveling at a reasonable speed. Thus, the trial court must deal with it. The first assignment of error is sustained.

{¶13} In the second assignment of error, Godfrey claims that the trial court erred by not considering all of the evidence when ruling on the motion for a new trial. Having sustained the first assignment of error, the matter is being remanded to the trial court for additional consideration. Thus, the second assignment of error is moot and need not be addressed at this time. This court makes no ruling on the merits of the assignment of error at this time. The second assignment of error is overruled.

{¶14} Godfrey argues in the third assignment of error that the trial court erred by allowing the civil attorney for Karmann's family to 1) confer with the State about a possible objection and 2) to file a brief opposing his motion for a new trial. The attorney argued that he was representing the family and as such had certain rights as a representative for the victim. However, these rights are limited to those of the victim. This court notes that there is no statute or case law that

allows for this highly unusual and potentially ill-advised combination of a civil and a criminal matter. The trial court allowed it as a right by the victim. Advising the prosecutor on legal issues during trial or arguing legal issues before the trial court hearing a criminal case is not a right granted to victims by either the Ohio Constitution or chapter 2930 of the Ohio Revised Code.

> **Victims of criminal offenses shall be accorded fairness, dignity, and respect in the criminal justice process, and, as the general assembly shall define and provide by law, shall be accorded rights to reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process. This section does not confer upon any person a right to appeal or modify any decision in a criminal proceeding, does not abridge any other right guaranteed by the Constitution of the United States or this constitution, and does not create any cause of action for compensation or damages against the state, any political subdivision of the state, any officer, employee, or agent of the state or of any political subdivision, or any officer of the court.**

Ohio Constitution, Article I, Section 10(a).

{¶15} As to the objection raised by the attorney for Karmann's representative and presented by the State, this court need not rule as to whether Karmann's representative's attorney or any other victim would have the right to ask the court for a recess so that they could confer with the State concerning a potential objection. The objection relayed by the State was overruled and no challenge to the ruling was made. Thus, any error would be harmless.

**{¶16}** The second action by Karmann's representative was the filing of a memorandum in opposition to Godfrey's motion for a new trial. Again, the rights granted to a victim by both the Ohio Constitution and statute require that a victim be kept informed by being given notice, information, and a "meaningful role" in the criminal justice system. However, this meaningful role does not make a victim a party to a criminal action. See *State v. Williams*, 7th Dist. No. 09 MA 11, 2010-Ohio-3279 (holding that a victim is not a party in a criminal prosecution) and *State v. McMannis*, 10th Dist. No. 01AP-413, 2001-Ohio-4279. Additionally, the Ohio State Constitution specifically provides that all prosecutions shall be conducted by and in the name of the State of Ohio. Ohio Constitution, Article IV, Section 20. Thus, the appropriate parties in a criminal proceeding are the State and the defendant. Victims are not parties. *Williams, supra* at ¶30. "It is not the victim's interests that are being represented in a criminal case, but rather those of the people of the State of Ohio." *Id.* at ¶31. Since Karmann, as the victim, was not a party to this case, neither she nor her representative would have standing to participate in the actual prosecution of the case. This is further supported by the Rules of Criminal Procedure which defines the "State" as "state, a county, city, village, township, other political subdivision, or any other entity of this state that may prosecute a criminal action." Crim.R. 2(H). This definition does not identify a victim as one who may prosecute a claim.

{¶17} In addition, unlike the appellate rules, the criminal rules do not provide any procedures for the filing of an *amicus curiae* brief by non-parties. The appellate rules as well as the Supreme Court Rules of Practice all contain necessary procedures for a non-party to file a brief in support of or against an argument. However, there is no such procedure permitted in the trial courts. *State, ex rel Hardin County Pub. Co. v. Hardin Memorial Hosp.*, 3d Dist. No. 6-02-04, 2002-Ohio-5586. Even if Karmann, and thus her attorney, did have the right to file an *amicus curiae* brief, that would not allow her to argue it before the court. Thus, the trial court erred by granting the attorney for Karmann's representative not only the right to file a brief in response to Godfrey's motion, but also by allowing the attorney to argue that brief. The third assignment of error is sustained.

{¶18} Godfrey claims in the fourth assignment of error that the trial court erred by not allowing him to have an independent stenographer take notes of the proceedings in addition to the official court reporting. These notes were to be solely for Godfrey's use and were not to be the official version. A trial court has discretion to exercise authority over the proceedings in its courtroom. *State v. Sowell*, 10th Dist. No. 06AP-443, 2008-Ohio-3285. Godfrey has pointed to no prejudice from the trial court's decision in this case. No one was banned from the courtroom and Godfrey still received a copy of the transcript. Any error, if

one existed, would be harmless. Crim.R. 52(A). Thus, the fourth assignment of error is overruled.

{¶19} Finally, Godfrey argues that his conviction was against the manifest weight of the evidence. Having found that an issue of fact remains to be decided by the trial court, this question is not ripe for review. This court makes no ruling on the merits of this assignment of error at this time. The fifth assignment of error is overruled.

{¶20} The judgments of the trial court are affirmed in part and reversed in part. The matter is remanded for further proceedings in accord with this opinion.

*Judgments Affirmed in Part,*
*Reversed in Part and,*
*Causes Remanded*

**ROGERS, J., concurs.**

**/jlr**

**SHAW, J., DISSENTS**

{¶21} I respectfully dissent from the majority opinion in this case, particularly with regard to the first and third assignments of error. I choose to write only as to the majority's disposition of the first assignment of error. The majority cites as support for its opinion this court's decision *In re Neill*, 3d Dist. Nos. 8-04-08, 8-04-09, 2005-Ohio-1696. In *Neill*, I dissented from the majority's

holding that the fact-finder must make a specific and affirmative finding regarding the reasonableness of the speed of the decedent. As in *Neill*, I am not convinced that "the statute or case authority requires the fact-finder in a case such as this to make a special finding as to the speed of [a vehicle] in order to demonstrate the legitimacy of its overall determination of guilt." *Id.* at ¶ 26 (Citations omitted).

{¶22} Moreover, in *Neill*, I felt that the trial court had implicitly made the finding in its analysis. *See Neill*, ¶¶ 24- 35 (Shaw, J. *dissenting*). I reasoned that "the determination is implicit in the trial court's analysis of proximate cause and that the essential inquiry for this court [was] simply whether the totality of the evidence supports the conclusions necessary for conviction, including the conclusion that the overall speed of the motorcycle was not unreasonable to the extent that it became the proximate cause of the collision." *Neill*, ¶ 25.

{¶23} Similar to *Neill*, it would appear here that the trial court implicitly considered the reasonableness of the decedent's speed, but rested its decision more on the fact that witnesses had seen the truck still in the roadway, and that the trial court believed the defendant "misjudged the fact that he could clear the northbound lane and safely get on the southbound lane." (Tr. at 222). The trial court also noted that even the reconstructionist's testimony indicated that the back of the trailer was still in the northbound lane when it was struck. (*Id.*) The trial court thus gave greater weight to the evidence that the truck was still in the

-14-

roadway than the evidence presented regarding the decedent's speed.  Therefore, I would hold that the trial court implicitly considered the decedent's speed, which was testified to by multiple witnesses in the trial, all of which supports the finding of the trial court that the defendant failed to yield the right-of-way.

**{¶24}** In contrast, the majority has essentially manufactured a requirement for a separate trial and finding of guilt as to the factor of speed within the overall trial of the failure to yield and vehicular manslaughter charges.  I do not believe there is any basis for the appellate court imposing such a requirement upon the trial process conducted by a trial court.

**{¶25}** I would affirm the judgment of the trial court.

/jlr