[Cite as *Barberton v. Kay*, 2018-Ohio-2709.]

STATE OF OHIO           )                    IN THE COURT OF APPEALS
                        )ss:                 NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT        )

STATE OF OHIO                                C.A. No.      28772

    Appellee

    v.                                      APPEAL FROM JUDGMENT
                                            ENTERED IN THE
LELENYA KAY                                  BARBERTON MUNICIPAL COURT
                                            COUNTY OF SUMMIT, OHIO
    Appellant                               CASE No.      17 TRD 2405

DECISION AND JOURNAL ENTRY

Dated: July 11, 2018

SCHAFER, Presiding Judge.

**{¶1}** Defendant-Appellant, Lelenya Kay, appeals her conviction in the Barberton Municipal Court. For the following reasons, this Court affirms.

I.

**{¶2}** On April 1, 2017, Ms. Kay was cited for making an improper left turn by failing to yield the right-of-way in an intersection in violation of section 331.17 of the Barberton Code of Ordinances ("B.C.O."), a minor misdemeanor. The citation stemmed from a collision between the vehicle driven by Ms. Kay and another vehicle driven by Mr. Carpenter. Officer Brandon Watson of the Barberton Police Department was on patrol that night and was dispatched to the scene of the collision along with another officer, Sergeant Davis.

**{¶3}** Just prior to the collision, Ms. Kay was traveling north on Wooster Road in Barberton, Ohio, approaching the intersection with State Street. Ms. Kay attempted to make a left turn onto State Street. The vehicle driven by Mr. Carpenter, traveling south on Wooster

Road, also entered the intersection from the direction opposite Ms. Kay. In the intersection, Ms. Kay's vehicle collided with the vehicle driven by Mr. Carpenter.

{¶4} The matter proceeded to a bench trial on August 7, 2017. Mr. Carpenter and Officer Watson testified on behalf of the State at trial. Ms. Kay testified on her on behalf at trial. Although no independent witnesses came forward at the time of the accident, Roger Derwin later came forward as a witness in response to a newspaper advertisement Ms. Kay placed in the Barberton Herald seeking witnesses to the collision, and he appeared to testify at trial.

{¶5} At the conclusion of the trial, the trial court found Ms. Kay guilty of violating B.C.O. 331.17 and sentenced her to pay a fine of $50.00 plus court costs. Ms. Kay timely appeals her conviction and raises one assignment of error for our review.

II.

**Assignment of Error**

**The trial court's decision and verdict finding [Ms. Kay] guilty beyond a reasonable doubt of violating [331.17 of the Barberton Code of Ordinances, right of way when turning left,] where [Ms.] Kay presented substantial evidence rebutting the presumption that the driver approaching from the opposite direction was proceeding lawfully, and the only evidence presented by [the State] that the other driver was proceeding lawfully was his self-serving, conflicting, trial testimony.**

{¶6} Ms. Kay argues on appeal that her conviction for violating B.C.O. 331.17 is against the manifest weight of the evidence. In determining whether a criminal conviction is against the manifest weight of the evidence, this Court is required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of

appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court * * * disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence and grant a new trial only in the exceptional case in which the evidence weighs heavily against the conviction. *Otten* at 340.

{¶7} Ms. Kay was convicted of violating B.C.O. 331.17, which states in pertinent part:

> The operator of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

331.17(a). B.C.O. 331.17, which is analogous to R.C. 4511.42, does not define the term "right-of-way." However, R.C. 4511.01(UU)(1) defines the term as "[t]he right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path[.]"

{¶8} A driver "can forfeit the right of way if he or she fails to proceed in a lawful manner[.]" *State v. Huffman*, 9th Dist. Wayne No. 14AP0052, 2016-Ohio-8093, ¶ 14, quoting *In re Neill*, 160 Ohio App. 3d 439, 2005-Ohio-1696, ¶ 10-11 (3d Dist.). The law presumes that

> a vehicle that ostensibly has the right of way is proceeding lawfully, [and so] the state is not required to prove lawful operation as an element of proving a violation [for] failure to yield. Rather, a defendant who asserts that an opposing driver's right of way has been forfeited is required to present evidence rebutting the presumption of lawful operation. A driver proceeds in a lawful manner by complying with Ohio traffic laws. (Internal citations and quotations omitted.)

*City of Cuyahoga Falls v. Ivanov*, 9th Dist. Summit No. 24202, 2009-Ohio-3000, ¶ 8, quoting *Neill* at ¶ 10.

{¶9}   On appeal, Ms. Kay argues that B.C.O. 331.17 "does not impose an absolute duty upon [Ms.] Kay to yield to all oncoming traffic when making a left turn, but rather, only requires her to yield to oncoming traffic proceeding lawfully into the intersection."  It is Ms. Kay's contention that the State was entitled to an initial presumption that Mr. Carpenter was traveling lawfully, but that Ms. Kay "presented sufficient evidence to rebut this presumption [by] testifying that she had a green arrow when she began her turn."  Ms. Kay argues that her uncontroverted testimony that she had a green arrow creates an "inference" that Mr. Carpenter either entered the intersection on a red light or, alternatively, was traveling at a rate of speed which caused him to collide with Ms. Kay before she could clear the intersection.

{¶10}   At trial, Mr. Carpenter testified that he was traveling south on Wooster Road in the lane "second to the farthest to the right" as he approached the intersection with State Street. Mr. Carpenter testified that the traffic light at the intersection was red when he approached the hill leading up to the intersection.  However, once he reached the hill, the light turned green so he proceeded through the intersection without having to make a stop.  Mr. Carpenter testified that he could see a vehicle coming out for a left turn as he entered the intersection and he thought maybe the driver was just edging out.  Once he realized that the driver was not going to stop he tried to take evasive action by going over a little bit or veering toward a "small lane" to get out of the way and by applying his brakes.  According to his testimony, Mr. Carpenter had already "started to come through" the intersection when the vehicle—driven by Ms. Kay—began to turn, and he was closer to clearing the intersection when their vehicles collided.

{¶11}   At the scene, Officer Watson spoke first with Ms. Kay.  According to Officer Watson, Ms. Kay informed him that she observed a green arrow before making a left turn and the other vehicle—driven by Mr. Carpenter—had come straight through the intersection.  Officer

Watson testified that Ms. Kay was still in her vehicle at that point, complaining of injury, when the paramedics arrived. Officer Watson then went to speak with Mr. Carpenter, who indicated to Officer Watson that he had been heading south on Wooster Road, proceeded into the intersection on a green light, and noticed another vehicle making a left turn in front of him just before the collision.

{¶12} Next, Officer Watson surveyed the scene of the accident, noting the debris field in the intersection. Based on the location of the debris field, Officer Watson determined that the point of impact of the vehicles was "further into the intersection on Ms. Kay's side of where she started from." Considering the location of the vehicles, the debris field, and observations of the scene, Officer Watson determined that the vehicle "turning left should have yielded the right of way to the [vehicle] coming straight through the intersection[.]" On this basis, Officer Watson issued a traffic citation to Ms. Kay for violating B.C.O. 331.17.

{¶13} Mr. Derwin testified next, explaining that he witnessed the collision but did not stop that night. He claimed he came forward after he read Ms. Kay's advertisement, seeking a witness to the collision, in a Barberton newspaper. Mr. Derwin testified that he observed the traffic light change to a green arrow in Ms. Kay's lane before she proceeded through the intersection on a green arrow. He testified that a second later the light in his lane turned green. Mr. Derwin's testimony seems to place him in a north-bound lane, to the right of the turning lane and Ms. Kay's vehicle, heading straight through the intersection just prior to the collision. However, Mr. Derwin's testimony regarding his direction of travel lacked consistency, as he also indicated that he had been traveling on State Route 619 and/or turning onto State Route 619 during his testimony. In any event, while Mr. Derwin confirmed that Ms. Kay proceeded

through the intersection with a green arrow, he was unable to offer any testimony as to whether Mr. Carpenter had lawfully entered the intersection.

{¶14} Ms. Kay testified that she proceeded to make a left turn through the intersection, from Wooster Road to State Street, after the traffic light indicated a green arrow in her lane. According to Ms. Kay, she did not see the accident coming, and "[w]hen the accident happened or when [her] car was hit [she] slammed on [her] brakes." Ms. Kay's testimony indicates that she believed she had the right-of-way in making a left turn based on the green arrow. However, her testimony clearly established that she proceeded to make the left turn once she saw the green arrow, and entered the intersection without first looking to determine whether there were any vehicles entering or within the intersection.

{¶15} The evidence establishes beyond a reasonable doubt that Ms. Kay was the operator of her vehicle, that she entered the intersection making a left turn, that Mr. Carpenter's vehicle had entered the intersection approaching from the opposite direction, and that Ms. Kay failed to yield the right of way to Mr. Carpenter's vehicle by proceeding with her left turn while Mr. Carpenter was within the intersection or so close thereto as to constitute an immediate hazard. Officer Watson's testimony regarding his observations at the scene established that Mr. Carpenter was well into the intersection when the vehicles collided, further evidencing that Mr. Carpenter had the right-of-way. The State was not required to prove that Mr. Carpenter was proceeding lawfully through the intersection; rather the burden fell to Ms. Kay to present evidence that Mr. Carpenter forfeited his right of way by failing to proceed in a lawful manner in compliance with traffic laws. *Ivanov*, 2009-Ohio-3000, ¶ 8; *Neill* 2005-Ohio-1696, ¶ 10, *see also Huffman*, 2016-Ohio-8093.

**{¶16}** Although Mr. Derwin's testimony corroborated Ms. Kay's claim that she had a green arrow, the record reflects that there were grounds for the trial court to question the credibility of Mr. Derwin's testimony in light of his inconsistent statements and the trial court indicated that it would "just take the testimony for what it is worth." Moreover, even assuming as fact that Ms. Kay had the green arrow, she asserts only that this creates an *inference* that Mr. Carpenter was not proceeding lawfully. Ms. Kay does not point to any evidence to contradict Mr. Carpenter's claim that he lawfully enter the intersection with a green light prior to Ms. Kay making her left turn. The record contains no testimony conflicting with Mr. Carpenter's claims, and no evidence regarding the timing, sequence, or pattern of the traffic light at the intersection that might objectively establish the color of Mr. Carpenter's signal just prior to the collision. Even in her own testimony Ms. Kay could not definitively aver that Mr. Carpenter's vehicle entered the intersection unlawfully, and she conceded that she did not look to see if the intersection was clear before she proceeded to turn. The record does not support Ms. Kay's claim on appeal that Mr. Carpenter entered the intersection on a red light, that his rate of speed caused the collision, or that Mr. Carpenter otherwise proceeded unlawfully through the intersection.

**{¶17}** Having reviewed the record, this Court concludes that the evidence does not weigh against Ms. Kay's conviction, nor does it establish that Ms. Kay met her burden to rebut the presumption that Mr. Carpenter was proceeding lawfully. Ms. Kay has not demonstrated evidence in the record to support a finding that Mr. Carpenter forfeited his right-of-way through the intersection. Accordingly, the trial court's finding that Ms. Kay is guilty of violating B.C.O. 331.17 is not against the manifest weight of the evidence. Ms. Kay's assignment of error is overruled.

## III.

**{¶18}** Ms. Kay's sole assignment of error is overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

CHRISTOPHER J. VAN BLARGAN and KIMBERLY L. LUBRANI, Attorneys at Law, for Appellant.

JENNIFER ROBERTS, Assistant Law Director, for Appellee.