**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0512n.06

**No. 17-3895**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 15, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NICHOLAS SCHWIETERMAN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| KEVIN SMITH, Warden, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Respondent-Appellee. | ) | |
| | ) | |

**BEFORE:  COLE, Chief Judge; WHITE and NALBANDIAN, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**

Petitioner Nicholas Schwieterman, an Ohio prisoner, petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied Schwieterman's petition, finding that the state court's determination that his plea counsel were not ineffective was a reasonable application of Supreme Court precedent. We granted a certificate of appealability limited to whether the district court's deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) was proper and whether Schwieterman could establish that his previous lawyers were ineffective under the standards set forth by the United States Supreme Court. Despite reservations given the sparse record developed in state court, we affirm under AEDPA's deferential standard.

## I.    BACKGROUND

Schwieterman was driving a 1996 Bonneville west on Brockman Road in the early morning hours of March 15, 2008, in Mercer County, Ohio.  At the same time, Jordan Moeller was driving north on Country Road 716A in a 1995 Pontiac Grand Prix.  The vehicles collided at the intersection of those roads, where Schwieterman's direction had a stop sign and Moeller's did not.  Moeller and his three passengers all died from the collision.  Schwieterman and his passenger both survived.  According to police reports, although Schwieterman initially denied to responding officers that he was driving the Bonneville, he later admitted that he was the driver and stated that he remembered driving off the side of the road before the accident occurred.  Schwieterman had been drinking alcohol and using cocaine that night.  Blood and urine tests conducted after the accident confirmed the presence of cocaine and marijuana in Schwieterman's system and that Schwieterman's blood-alcohol content (BAC) was 0.134, well above the legal limit.  Moeller tested positive only for caffeine.

Responding officers, including at least one officer with advanced training in responding to accident scenes, documented the scene through measurements and photographs.  Schwieterman's car was found in a ditch in the northwest corner of the intersection next to a pole.  Moeller's car was found in the field further northwest of Schwieterman's car.  The front and rear of Schwieterman's car were severely damaged and his front bumper had separated from the vehicle and was found stuck to the side of Moeller's car; Moeller's vehicle was most severely damaged on the passenger side, with additional heavy damage on the driver's side rear.  Based on these observations, officers determined that Schwieterman had been at fault: he had not stopped at the stop sign and had struck the side of Moeller's car.  They opined that the rear of Schwieterman's car had collided with the pole.

A grand jury in Mercer County returned an indictment charging Schwieterman with four counts of involuntary manslaughter; eight counts of aggravated vehicular homicide; one count of possession of drugs; two counts of operating a motor vehicle while under the influence of alcohol or drugs of abuse (OMVI); and one count of trafficking in drugs. Schwieterman eventually pleaded no contest to the four counts of involuntary manslaughter,[1] and the drug-possession and OMVI counts. The plea agreement included the following provisions, with no reference to a specific sentence: Schwieterman must cooperate with the prosecuting attorney's office in its investigation and prosecution of the person who sold Schwieterman the cocaine; the state reserved its right to argue for any sentence; Schwieterman waived appeal of all claims unrelated to sentencing; the state could not seek to have Schwieterman remanded at the change-of-plea hearing or during the presentence investigation; and Schwieterman could not seek a stay of sentence pending appeal. The stipulated statement of facts in support of the no-contest plea included that Schwieterman "failed to yield the right-of-way and/or stop for the stop sign that controls the intersection" where the cars collided. (R. 7-3, PID 1010.) Schwieterman was sentenced to 24 years' imprisonment— six years for each involuntary-manslaughter count, to be served consecutively, and concurrent sentences of 12 months for the drug-possession count, and six months for the OMVI count.

On direct appeal, the Ohio Court of Appeals affirmed. *State v. Schwieterman*, No. 10-08-17, 2009 WL 1365087 (Ohio Ct. App. May 18, 2009). The Ohio Supreme Court declined to exercise jurisdiction and dismissed Schwieterman's appeal. *See* 914 N.E. 2d 1064 (Ohio 2009) (table).

---

[1] Ohio Revised Code § 2903.04(A) provides: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

While his direct appeal was pending, Schwieterman sought collateral review in Ohio state court by filing a Petition to Vacate or Set Aside Judgment pursuant to Ohio Revised Code § 2953.21, raising six claims, supported by affidavits and other exhibits. In his ineffective-assistance-of-counsel claim, he argued that the two lawyers who represented him in the proceedings leading to his plea (plea counsel) were ineffective for failing to adequately investigate how the collision occurred before counseling him to plead no contest. In support of his request for relief and for an evidentiary hearing, Schwieterman attached an affidavit and two simulations of the accident from an accident-reconstruction expert, Wilbur Meredith. Using the police crash report, personal inspection of the crash site and vehicles involved, photographs, and reconstruction software, Meredith reached the following relevant conclusions:

> 14) It is my opinion, beyond any reasonable doubt and with engineering certainty, that this accident was not the result of a "T-Bone" type crash as opined by the investigating police officers.
>
> 15) The first reason is because the Principle [sic] Direction of Force acting through the center of gravity of both vehicles causing the evidential damage to both of these vehicles indicates crash angle between the vehicles to be at approximately a 45-degree angle.
>
> 16) The second reason is because the resulting trajectories of the two vehicles after impact is consistent with the evidence as recorded by the police at the accident scene.
>
> 17) The third reason is because the opined estimate of the speed of the vehicle driven by Mr. Schwieterman is not consistent with a "high speed" of his vehicle at impact. It is consistent with the speed of 12-MPH as evidenced by the stuck speedometer on his car.
>
> 18) It is my opinion, with a reasonable degree of engineering certainty that it is not possible to prove beyond a reasonable doubt that Mr. Schwieterman did not stop at the stop sign as charged by the investigating police officers. The speed of his car at impact was too low to negate the possibility that he did stop at the stop sign.
>
> . . . .
>
> 20) It is my opinion, with a reasonable degree of engineering certainty, that the speedometers in both vehicles were stuck with their respective speed indicators at the impact speeds in each. The indicated speed of the Moeller vehicle being 84-MPH and the Schwieterman vehicle being 12-MPH. These speeds are consistent

with the reconstruction calculations by the writer and inconsistent with the police version of the accident with the Schwieterman vehicle "at a high rate of speed."

(R. 7-23, PID 1394-95.)

Meredith's simulations were presented as two versions of reconstruction animations: the "POLICE VERSION" and the "WRM VERSION."[2]  The police version shows both vehicles traveling constant at 30 mph[3] until Schwieterman's vehicle slams into the side of Moeller's vehicle in the intersection at approximately a 90-degree angle.  In this simulation, the vehicles do not come to rest near where the vehicles actually stopped.  In contrast, the WRM version shows Schwieterman's vehicle stop at the stop sign and accelerate to 12 mph before being struck near the front driver's-side wheel by Moeller's car, which was traveling at 84 mph.  In this simulation, the vehicles stop where they did after the accident.  The simulations do not show the resultant damage to the vehicles.

Schwieterman also attached police reports, his affidavit, and affidavits from his family members, plea counsel, and his passenger.  Plea counsel's affidavits contain very little information relevant to their investigation of the accident or Schwieterman's decision to plead no contest.  Plea counsel both state that they made attempts to resolve the matter with the government, but that the government initially made an "unrealistic offer[]" of "36 or 38 years of a 41 year maximum sentence."  (R. 7-23, PID 1397; *see also id.*, PID 1400 (stating that the first offer was 36 years' imprisonment).)  With the plea agreement Schwieterman eventually entered into, plea counsel both believed—based on their experience, demeanor of the court, and the plea negotiations—that

---

[2] "WRM" presumably stands for Wilbur R. Meredith.

[3] It is not clear from the record why this simulation uses speeds of 30 mph for both vehicles. Meredith notes in his affidavit that he "var[ied] the impact speeds of the two vehicles."  (R. 7-23, PID 1394.)

Schwieterman would be sentenced to 12-16 years of imprisonment, despite facing a maximum sentence of 41 years of imprisonment.

The affidavits from Schwieterman and his family state that plea counsel hired an expert named Doug Heard, who told Schwieterman's family that the accident occurred as the police said it occurred and that the speedometer readings on the vehicles after the crash had no value. The affidavits also state that Heard did not go to the scene of the accident or take measurements, but instead relied on the officers' version of events. There is no affidavit from Heard in the record.

Schwieterman further stated that after his motion to suppress was denied, his attorneys advised him to "throw himself on the mercy of the court." (*Id.*, PID 1408.) Although "he was bothered by the speedometer question and the presentation of the expert hired by the attorneys" and "believed he was giving up a great deal for very little in return from the State of Ohio," Schwieterman entered a no-contest plea and "was prepared to throw himself on the mercy of the court." (*Id.*) Schwieterman does not address whether he would have pleaded no contest had he been presented with Meredith's affidavit and simulations. He does state, however, that based on Meredith's simulations, "it appears that he would not have had time to react, drunk or not, to [Moeller's] car traveling at such a high rate of speed," and that he "takes solace in that he was not at fault in this accident." (*Id.*, PID 1409.)

The Ohio Court of Common Pleas denied Schwieterman's petition and request for an evidentiary hearing. The Ohio Court of Appeals affirmed, quoting the following relevant portions from the Court of Common Pleas opinion:

> The petitioner's fourth and fifth claims are that he was denied effective assistance of counsel * * *, first, by failing to properly investigate how the accident occurred; and second, for failing to give sound advice regarding the plea agreement.

The record does not support his claim that trial counsel's advice impaired the knowing and voluntary nature of his no contest plea.

* * *

Petitioner's claims regarding his counsel's failure to fully investigate the collision by retaining the services of an accident reconstruction expert do not fall below the objective standard of reasonable representation because the decision to rely on cross-examination of the prosecution's witness instead of producing a defense expert is trial strategy and does not itself constitute ineffective assistance. In addition, both attorneys for the petitioner visited the accident scene and thereby observed the scene of the crime first-hand. * * * As previously explained, even though petitioner's newly-retained counsel has obtained additional evidence from an independently hired accident reconstruction expert, that evidence does not contradict the facts as set forth in the stipulation of facts submitted at the change of plea hearing * * *. Therefore, the petitioner was not prejudiced by the actions of his counsel, even if trial counsel's assistance could be deemed ineffective.

*State v. Schwieterman*, No. 10-09-12, 2010 WL 169192, at *5 (Ohio Ct. App. Jan. 19, 2010). The

Ohio Court of Appeals initially found that most of Schwieterman's claims—including his

ineffective-assistance-of-counsel claim—were barred by res judicata. *Id.* at *9. But it also found

that the Court of Common Pleas was correct in denying an evidentiary hearing because

Schwieterman did not establish substantive grounds for relief that would warrant a hearing. *Id.*

The Ohio Supreme Court declined to exercise jurisdiction and dismissed Schwieterman's appeal,

*see* 927 N.E.2d 1128 (Ohio 2010) (table); the United States Supreme Court denied Schwieterman's

petition for a writ of certiorari, 562 U.S. 1031 (2010) (mem.).

Schwieterman then filed a petition for writ of habeas corpus in the district court, seeking

relief based in part on the ineffective assistance of plea counsel in failing to adequately investigate

the accident before advising Schwieterman to accept the plea agreement. The record before the

district court did not include Meredith's simulations because the state had failed to provide them

when it transmitted the balance of the state postconviction record to the district court. The district

court held that Schwieterman's ineffective-assistance claim was procedurally defaulted and

alternatively denied the claim on the merits. This court reversed, explaining that Schwieterman's

claim was not procedurally defaulted because "the state's irregular invocation of *res judicata* in this case is not an adequate independent state ground barring federal review." *Schwieterman v. Smith*, 612 F. App'x 825, 829 (6th Cir. 2015). We also found that the district court applied the wrong legal standard[4] to Schwieterman's ineffective-assistance claim, and that the state's failure to include Meredith's simulations left "untested facts [that] may control the outcome under clearly established federal law." *Id.* at 826, 829-30. We therefore remanded to the district court "to determine whether the petitioner's plea counsel was ineffective in light of the postconviction expert evidence concerning how the accident occurred, including the video reconstruction evidence mistakenly withheld from the district court." *Id.* at 830.

On remand, the district court again denied Schwieterman's petition and a certificate of appealability. We granted a certificate of appealability limited to whether the district court's deference under AEDPA was proper and whether Schwieterman could establish that his plea counsel was ineffective under the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

## II.    DISCUSSION

### A.  AEDPA Deference

We first address the threshold issue whether AEDPA deference applies. By its terms, AEDPA applies only to claims that have been "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Thus, if a claim has been adjudicated on the merits in state court, habeas relief may only be granted when a state court's decision "was contrary to, or involved an unreasonable

---

[4] "Instead of asking whether reasonable counsel and a reasonable defendant would have accepted the state's facts and entered a no contest plea after reviewing the expert reconstruction, the district court used an actual-innocence standard from an unpublished district court opinion and dismissed the claim because the reconstruction would not make it impossible for a reasonable jury to convict." *Schwieterman*, 612 F. App'x at 829 (internal quotation marks and citation omitted).

application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or when a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). On the other hand, claims that were not adjudicated on the merits in state court are reviewed de novo for questions of law and clear error for questions of fact. *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

AEDPA deference applies here because the state court adjudicated Schwieterman's ineffective-assistance claim on the merits. Although the Ohio Court of Appeals found that Schwieterman's claims were barred by res judicata, it also considered the merits of Schwieterman's ineffective-assistance claim. *See Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) ("[W]e give AEDPA deference to a ruling on the merits despite the fact that the reasoning was given as an alternative to a primary ground for decision."). In particular, considering all of Schwieterman's claims together, and after quoting large portions of the trial court's opinion addressing the merits of Schwieterman's claims, the Ohio Court of Appeals explained:

> Moreover, we note that Schwieterman did not establish "substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case." *Jones*, 2007-Ohio-5624, at ¶ 12. As noted by the trial court, even if evidence was destroyed that established the victim was traveling in excess of eighty m.p.h., and even if trial counsel would have hired an expert to establish that the accident did not occur in the manner as declared by the State, that evidence would not alter the fact that Schwieterman's failure to yield the right of way at the stop sign and his operation of the vehicle while under the influence of alcohol and cocaine proximately caused the deaths of the victims. It is well established that a decedent's contributory negligence is not a defense to a charge of vehicular homicide unless it is the sole proximate cause of the accident, *State v. Langenkamp*, 137 Ohio App.3d 614, 620, 739 N.E.2d 404, 2000-Ohio-1831; *State v. McGraw*, 3d Dist. No. 17-88-2, 1989 WL 153589; *State v. Dailey*, 5th Dist. No.2006-CA-0012, 2007-Ohio-2544, ¶ 32, and, clearly, the speed of the victim's vehicle was not the sole proximate cause of this accident.

*Schwieterman*, 2010 WL 169192, at *9. The Ohio Court of Appeals also quoted portions of the

trial court's conclusion about both prongs of Schwieterman's ineffective-assistance claim, and it

expressly adopted the trial court's conclusion that Meredith's affidavit and reconstruction

simulation would not have provided Schwieterman a viable defense under Ohio law to the

involuntary-manslaughter counts.[5] Accordingly, as Schwieterman himself conceded in briefing to

the district court on remand, AEDPA deference applies. (R. 38, PID 2180 ("[Petitioner] would

agree that the deferential standard set forth under the AEDPA would apply.").)

## B. Ineffective Assistance

### 1. Standard of Review

We review a district court's legal conclusions in a habeas corpus proceeding de novo and

its factual findings for clear error. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (en banc).

However, because Schwieterman's ineffective-assistance claim is subject to AEDPA's heightened

standard of review, Schwieterman must establish that the state-court decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law" or involved an

"unreasonable determination of the facts."[6] 28 U.S.C. § 2254(d).

> A state-court decision is contrary to clearly established federal law only where the
> state court applies a rule that contradicts the governing law set forth in [Supreme
> Court] cases or confronts a set of facts that are materially indistinguishable from a
> decision of [the Supreme Court] and nevertheless arrives at a result different from
> [Supreme Court precedent]. Similarly, a state-court decision unreasonably applies
> federal law when it identifies the correct governing legal rule . . . but unreasonably
> applies it to the facts of the particular state prisoner's case, or if it unreasonably
> extends a legal principle from [Supreme Court] precedent to a new context where
> it should not apply or unreasonably refuses to extend that principle to a new context

---

[5] Although the Ohio Court of Appeals' decision could have been clearer, the Supreme Court has cautioned that "[t]he caseloads shouldered by many state appellate courts are very heavy, and the opinions issued by these courts must be read with that factor in mind." *Johnson v. Williams*, 568 U.S. 289, 300 (2013) (footnote omitted).

[6] Schwieterman does not raise a challenge under the "unreasonable determination of the facts" prong.

where it should apply. Simply misapplying the law is not enough. [T]he state court's decision must have been more than incorrect or erroneous. Rather, [t]he state court's application must have been objectively unreasonable.

*Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (alterations in original) (internal quotation marks and citations omitted). In other words, "[o]nly when fair-minded jurists could not disagree that a state court's merits decision conflicts with Supreme Court precedent may a federal court issue a writ of habeas corpus." *Barton*, 786 F.3d at 459-60 (citing *Harrington v. Richter*, 562 U.S. 86 (2011)).[7]

Schwieterman's burden is even greater due to the standard that applies to ineffective-assistance-of-counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a petitioner alleging ineffective assistance of counsel to show that "(1) counsel's performance was deficient, or put differently, 'fell below an objective standard of reasonableness'; and (2) the performance prejudiced the defendant." *United States v. Mahbub*, 818 F.3d 213, 230-31 (6th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687-88). "Because the *Strickland* standard is already 'highly deferential,' our review of a state-court decision on a *Strickland* claim is 'doubly deferential' under" AEDPA. *King v. Westbrooks*, 847 F.3d 788, 795 (6th Cir. 2017) (citations omitted).

---

[7] Our prior opinion held that "the state's irregular invocation of *res judicata* in this case is not an adequate independent state ground barring federal review." *Schwieterman v. Smith*, 612 F. App'x 825, 829 (6th Cir. 2015). The district court stated that "[t]he practical effect of that determination is that [the district court] is now applying AEDPA review to the state trial court's ruling, rather than that of the state appellate court." R. 40, PID 2198. But as explained previously, "we give AEDPA deference to a ruling on the merits despite the fact that the reasoning was given as an alternative to a primary ground for decision." *Hoffner*, 622 F.3d at 505. And, had the state appellate court not issued a decision on the merits but instead relied only on a procedural bar, we would review Schwieterman's claim de novo. *See Hill v. Mitchell*, 842 F.3d 910, 938 n.14 (6th Cir. 2016) ("[E]ven if a trial court decides a claim on the merits, that decision is 'stripped of any preclusive effect under the last-reasoned decision rule' when the state appellate court affirms the trial court's decision 'entirely based on a procedural bar.'" (quoting *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015))), *cert. denied*, 138 S. Ct. 82 (2017).

AEDPA's application complicates matters for Schwieterman in one more respect. He requested an evidentiary hearing in the district court to present the opinion of an additional expert and testimony from his plea counsel and Heard. This evidence would almost certainly be relevant to Schwieterman's ineffective-assistance claim. However, as the district court noted, our review under § 2254(d) is limited to the evidence that was presented to the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is true even where, as here, the petitioner sought to introduce additional evidence in state court. *Ballinger v. Prelesnick*, 709 F.3d 558, 561-62 (6th Cir. 2013) ("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it.").

### 2. Deficient Performance and Prejudice

We turn to the merits of Schwieterman's ineffective-assistance claim based on the record that was before the state court. "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). But there is a slight modification to the prejudice prong of the *Strickland* test. To show prejudice in the plea context, Schwieterman "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Schwieterman argues that his plea counsel performed deficiently because they failed to adequately investigate how the crash occurred prior to advising Schwieterman to plead no contest—including by failing to hire an expert to reconstruct the accident as Meredith did, and failing to seek additional evidence to determine the speed at which both vehicles were traveling.

The Supreme Court has cautioned federal courts to strictly adhere to the *Strickland* standard when reviewing choices made by attorneys during plea negotiations. *See Premo v. Moore*, 562 U.S. 115, 124 (2011).

> Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.
>
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture[.]" Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id.* at 125 (citations omitted).

Based on the state-court record, it appears that the information available to plea counsel consisted of the following: four people died as a result of the accident; Schwieterman was driving his vehicle while over the legal BAC limit and under the influence of cocaine when the accident occurred, and evidence establishing those facts would not be suppressed; the other driver tested positive only for caffeine; investigators had determined based on, among other evidence, the location of and damage to the vehicles that Schwieterman had struck Moeller's vehicle; and plea counsel's retained expert—whose credentials Schwieterman has not challenged—agreed with the

state investigators' conclusions.[8]  Plea counsel also filed affidavits indicating their belief, based on their experience, the demeanor of the court, and the plea negotiations, that Schwieterman would be sentenced to 12-16 years of imprisonment, a substantially lower sentence than the state initially offered.

Schwieterman cannot establish on this record that the state court's determinations regarding plea counsel's performance were unreasonable.  With hindsight and a different expert, Schwieterman has presented additional evidence that calls into question some of the investigators' conclusions about how the accident occurred.  But Schwieterman has pointed to no Supreme Court cases establishing that plea counsel was required to do more in this case.  The only case he cites is *Rompilla v. Beard*, 545 U.S. 374, 387 (2005), to argue that "failure to investigate may constitute ineffective assistance." (Appellant's Br. at 25.)  No one disputes that proposition.  But *Strickland* declares that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  *Rompilla* held that defense counsel performed deficiently during capital sentencing by failing to review a readily available prior-conviction file even though counsel knew the prosecution intended to introduce testimony about that prior conviction.  545 U.S. at 383-90.  In *Rompilla*, the necessary and minimal investigative steps would thus have been clear to any reasonably diligent attorney.  Here, in contrast, the record suggests that plea counsel retained at least one expert to evaluate the accident, and that expert agreed with the state's conclusion that Schwieterman was at fault in the accident.  Photographs of the vehicles also support the state's version of events.  Under these circumstances, we cannot say that it was an unreasonable

---

[8] The state cited authority in briefing to the district court and on appeal supporting Heard's alleged opinion that speedometer readings after an accident are often not scientifically reliable.  However, no such argument was made to the state postconviction court.

application of *Strickland* for the state court to conclude that plea counsel's decision not to investigate further was reasonable. *See Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) (noting that "[t]he Supreme Court has never [answered] how many experts must an attorney contact before proceeding without one, what kinds of outside advice can the attorney rely upon, and ultimately how hard must he try"); *see also Premo*, 562 U.S. at 126 ("The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.").

In sum, given that plea counsel had, in fact, consulted an expert,[9] it was not unreasonable for the state court to conclude that plea counsel's decision to recommend a plea fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even if the state court's assessment of plea counsel's performance was unreasonable, Schwieterman would also need to show that the state court was unreasonable in determining that he did not show that, absent plea counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The Ohio Court of Appeals explained that, under Ohio law, a decedent's contributory negligence is not a defense unless it is the sole proximate cause of the accident. *Schwieterman*, 2010 WL 169192, at *9. Because Meredith's evidence did not contradict the stipulated facts "that Schwieterman's failure to yield the right of way at the stop sign and his operation of vehicle under the influence of alcohol and cocaine proximately caused the deaths of the victims," the Ohio Court

---

[9] Schwieterman asserts that Heard was hired to convince him to accept a plea agreement, but nothing in the record supports this assertion.

of Appeals concluded that this new evidence would not have provided Schwieterman a defense to the counts to which he pled. *Id.* The Ohio Court of Appeals also quoted at length from the Court of Common Pleas' opinion, which cited *Strickland*[10] and found no prejudice for similar reasons. *Id.*, at *4.

Schwieterman has not demonstrated that the state-court decision was contrary to or unreasonably applied clearly established federal law. As *Hill* explained, the determination of prejudice in the plea context "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which "in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. Here, the state court determined under state law that regardless whether Schwieterman stopped at the stop sign, Moeller's speeding would not have been a defense to the involuntary-manslaughter counts. Schwieterman cites no authority to challenge that statement of Ohio law, which appears to be correct. *See, e.g.*, *State v. Garland*, 688 N.E.2d 557, 562 (Ohio Ct. App. 1996) ("A decedent's contributory negligence does not exonerate criminal liability under R.C. 2903.04(B) unless such negligence was the sole proximate cause of the accident. Appellant argues that if Pennington had not been speeding, the two never would have met in the intersection at the precise moment of the collision. However, by the same token, if appellant had not run the stop sign, the accident never would have occurred. Since it cannot be said that the accident was the sole proximate result of Pennington's speed, it was not an abuse of discretion for the trial court to exclude such evidence on the basis of relevancy." (citations omitted)). Although Meredith

---

[10] Although neither state court cited *Hill*, satisfaction of AEDPA's standard "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

concluded that the state could not prove beyond a reasonable doubt that Schwieterman failed to stop at the stop sign, that does not controvert the stipulated fact that Schwieterman failed to yield the right of way to Moeller; even if Schwieterman had stopped, he nevertheless proceeded into the intersection and collided with an oncoming car that had no stop sign, thus failing to yield the right of way. Because the state court's determination that Meredith's evidence would not have provided a defense to the involuntary-manslaughter charges is supported by state law, the state court did not unreasonably conclude that Schwieterman could not show prejudice. *See Hill*, 474 U.S. at 59.

Our prior opinion noted that Meredith's simulations were important evidence that the district court needed in order to properly analyze Schwieterman's petition. *Schwieterman*, 612 F. App'x at 827. Indeed, the value and persuasiveness of these simulations and Meredith's affidavit are relevant to the reasonableness of the state court's determination of prejudice: the more compelling the evidence, the stronger Schwieterman's prejudice argument would be. *See Hill*, 474 U.S. at 59. Having reviewed this evidence closely, however, we do not believe it changes the outcome. First, Meredith's affidavit consists only of a series of conclusory assertions. There is no explanation of the simulations he provided, and the assertions Meredith makes in his affidavit do not compel a finding that the accident occurred in the way the simulations reflect. Further, the simulations do not appear to be consistent with the color photographs or police reports showing heavy damage to Schwieterman's car's front end, heavy damage to Moeller's car's passenger side, and the report of Schwieterman's front bumper being stuck to Moeller's passenger side. Finally, Meredith's simulations and affidavit only establish that Schwieterman *may* have stopped at the stop sign, not that he did.

Even if Meredith's evidence provided Schwieterman a strong defense, the Supreme Court has explained that "the question in the present case is not whether [the petitioner] was sure beyond

a reasonable doubt that he would still be convicted." *Premo*, 562 U.S. at 130. This is because "[m]any defendants reasonably enter plea agreements even though there is a significant probability—much more than a reasonable doubt—that they would be acquitted if they proceeded to trial." *Id.* Rather, the appropriate inquiry "is whether [the petitioner] established the reasonable probability that he would not have entered his plea but for his counsel's deficiency, and more to the point, whether a state court's decision to the contrary would be unreasonable." *Id.* Schwieterman admits on appeal that whether plea counsel would have advised against a plea "is a difficult question to answer given the state of the record both in state court and in the district court." (Appellant's Br. at 29.) Simply presenting a "difficult question to answer" is insufficient to meet AEDPA's high bar. Although we agree with Schwieterman that additional evidence would aid our inquiry, we must review the record as it was before the state court. And there is nothing in this record that establishes that plea counsel would have changed their recommendation to accept a plea agreement if they had been aware of Meredith's simulations and affidavit, or that Schwieterman would have rejected their advice in light of these materials.

Finally, Schwieterman argues that, despite the absence of such an assertion in his affidavit, it is "common sense" that he would not have pleaded no contest to the four counts of involuntary manslaughter if he had seen Meredith's simulations, which is evidenced by his attempts to overturn his convictions and withdraw his plea post-sentencing. (Appellant's Br. at 28.) There is no support for Schwieterman's argument that simply seeking to withdraw one's plea post-sentencing establishes prejudice under *Strickland* and *Hill*. Indeed, if that were the case, prejudice would be found in every case where a petitioner seeks to withdraw his plea based on ineffective assistance of counsel.

Accordingly, Schwieterman has not established that the state court was objectively unreasonable in concluding that he did not show a reasonable probability that he would have insisted on going to trial facing a possible sentence of 41 years' imprisonment as opposed to the 12-16 years' imprisonment that his plea counsel anticipated he would receive.

### III.    CONCLUSION

For the reasons set out above, we **AFFIRM**.